[No. 23581. Department Two. March 9, 1932.]

*In the Matter of the Estate of* CHARLES W. CHAFEY, *Deceased.*[1]

*Hanna & Gemmill* and *Hughes & Hughes,* for appellant.

*Crollard & O'Connor,* for respondents.

MILLARD, J.—Charles W. Chafey died at Soap Lake, October 7, 1930. No will was found. Gertrude I. Fritz, a niece of the decedent, was appointed, and qualified October 29, 1930, administratrix of the estate of her deceased uncle.

On June 17, 1931, she filed a petition for probate of a writing purporting to be the decedent's last will and testament, which the petitioner alleged was found subsequent to the issuance to her of letters of administration. She prayed appointment as administratrix with the will annexed. Certain heirs objected to the admission of the writing to probate. The hearing resulted in the entry of an order rejecting probate of the writing, the court expressing the view:

"I am inclined to think that, under the laws of this state, a will in order to be valid must be made in ac-

[1]Reported in 8 P. (2d) 959.

cordance with the statute, and that no presumption lies in its favor in the absence of attestation forms  . . . the matter should be construed upon the failure to sign as the law requires or to have an attestation clause or in the absence of such clause to furnish proof of elements necessary to such a will.''

From the order rejecting probate of the writing, petitioner Fritz has appealed.

Charles W. Chafey was an orchardist near Wenatchee for twenty or more years. He sold his orchard, which was two miles from Wenatchee, two years prior to his death in 1930. When he sold the orchard, he reserved the right to remove therefrom a shack in which he lived during the ownership of the orchard. He lived in that shack after the sale of the orchard until a short time before he died at Soap Lake, in 1930. The shack was torn down and removed by the administratrix April 28, 1931, upon request of the owner of the orchard. In the course of the destruction of the shack, there was found on a sill above the doorway a newspaper bearing the same date as the purported will. Wrapped in that newspaper was a portion of a used envelope, in which was the writing which is the subject matter of this controversy. On one side of a sheet of writing paper appears the following, conceded to be in the handwriting of the decedent:

"November 24, 1915.
"My last will and wishes. I leave five hundred dollars to my sister Mrs. Anna Diercouff, Thawville, Illi. I leave fifty dollars to Jimmy Duffy Junior, Winatchee, Wash. The rest of my estate to my sister oldest daughter Gertie Diercoff—over—"

On the other side of the writing paper appears the following, all of which, except the signatures of Brooks and Fisher, is also admitted to be the handwriting of the decedent:

"Thawville Illi.
      Signed
         C. W. Chafey.
"Sam R. Brooks              Leury Fisher
   Spokane,                    Colfax
      Wash.                 Route 2    Wash."
   Box 354

The newspaper and the contents were placed on the sill in the studding when the inside of the shack had been unceiled. Later, the inside of the shack was ceiled and the studding enclosed. At least three coats of wallpaper were placed over the walls of the room after the newspaper and the writing it enfolded were placed above the doorway between the inner and outer walls. There was no opening in the wall. Access to the place where the papers were found could be gained only by removing a portion of the inner wall of the building. There was no evidence that the papers were deposited there for safekeeping. Chafey kept his notes, mortgages and other valuable papers in a deposit box of a trust company in Wenatchee, which box was opened by the administratrix of Chafey's estate, but no will was found therein.

The two witnesses to the purported will were non-resident, itinerant orchard laborers who were in Chelan county during the harvesting period of the years 1914 and 1915. They were not called to testify at the hearing on the petition for probate, as their whereabouts since 1916 were unknown. The only proof of the handwriting of the two witnesses to the instrument was the testimony of a grocery clerk as to the signature of Fisher and the testimony of a livery stable employee as to the signature of Brooks. Neither of these witnesses was intimately acquainted with Fisher or Brooks, whose signatures the witnesses had not seen since 1916. Based upon his observation of

the indorsement in 1914 and 1915 by Fisher of pay checks, the clerk identified Fisher's signature. Upon the same basis, the other witness testified as to the genuineness of Brooks' signature.

■ The trial court properly rejected probate of the writing. A writing is not valid as a will unless it complies with the provisions of the statute. The statute requires that the testator's signature shall be attested by two or more competent witnesses, who must subscribe their names to the will in the presence of the testator by his request.

"Every will shall be in writing signed by the testator . . . and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator . . . by his . . . direction or request." Laws of 1929, chap. 21, p. 18, § 1.

It is the purpose of the statute that the witnesses do more than merely sign a paper.

"The word 'attested' is broader in meaning than the word 'subscribed,' and it is the purpose of the statute in requiring two witnesses to attest the will to have more than the mere signatures of two persons to the will. It was the duty of the attesting witnesses, under the statute, to observe and see that the will was executed by the testator, and that he had capacity to execute the will." *Maxwell v. Lake,* 127 Miss. 107, 88 South. 326.

"Attestation is not a mere form. It has a vital object. That object is to certify that the will was acknowledged in the presence of the witness and that the signature was genuine." *In re Jones' Estate,* 101 Wash. 128, 172 Pac. 206.

It will be noted that, while the instrument offered for probate contains the signatures of the decedent and two other persons, there is no semblance of an attestation clause, as the statute requires. Nowhere in the

instrument is the word "attest," or the word "witness," or any word of similar import. The writing does not contain any form of attestation clause which would constitute *prima facie* evidence that the instrument was signed by Fisher and Brooks as witnesses in the presence of the testator by his direction or request.

If there were an attestation clause in conformity to the statute, and the will bore the genuine signature of the testator (the signature is conceded to be that of Mr. Chafey), that would be *prima facie* evidence of the due execution of the will. The fact that the subscribing witnesses were dead, insane or were beyond the jurisdiction of the court, would not defeat the validity of the will, if in fact it was duly executed. In such case, the court may admit proof of the handwriting of such witness, and admit the instrument to probate as though it had been proved by such subscribing witness in his or her proper person.

"It is proved that this witness had deceased before the trial; but 'the death of an attesting witness, or of all the attesting witnesses, is not to defeat the validity of the will, if, in fact, duly executed. It changes the form of the proof, and allows of the introduction of secondary evidence of the due attestation and execution of the will. Such attestation is then to be shown, as it would be in case of deeds, by proof of the handwriting of the witness. That being shown, *prima facie*, it is to be taken to be true, and to have been put there for the purpose stated in connection with the signature. It is to be assumed, as regards that witness, that he duly attested the will in the presence of and at the request of the testator." *Nickerson v. Buck,* 12 Cush. (Mass.) 332.

There was no attestation clause in the purported will. There was not even the word "attest" or the word "witness" above the names of those claimed to

be witnesses to the will. There was nothing to show that the two persons signed as witnesses in the presence of the testator by his direction or request. Those witnesses were beyond the jurisdiction of the court and did not testify.

The testimony as to the genuineness of their signatures is unimportant. Where there is no attestation clause, there is no presumption of regularity in the execution of a will; and due attestation and execution of such will can not be shown by testimony as to the genuineness of the signatures of purported attesting witnesses who are dead, insane or beyond the jurisdiction. To adopt any other rule would be to disregard the statute, compliance with the provisions of which is essential to the validity of a will.

The order is affirmed.

TOLMAN, C. J., MAIN, HOLCOMB, and BEALS, JJ., concur.