[No. 26188. Department Two. August 21, 1936.]

*In the Matter of the Estate of* ANDREW H. CHAMBERS, *Deceased.*

JOHN W. CHAMBERS, *Appellant,* v. EDWARD P. STEERE, *Respondent.*[1]

[1]Reported in 60 P. (2d) 41.

418

*Lewis & Black,* for appellant.

*Ballard & Houghton,* for respondent.

BEALS, J.—This is a will contest, the only question presented being that of whether or not the alleged will was executed as required by the statute. It is not contended that the testator was mentally incompetent to

make a will, or that, in signing the document offered as his will, he was acting under undue influence.

During the month of February, 1936, Andrew H. Chambers, an aged man suffering from a mortal disease, was a patient in a hospital at Ellensburg. February 22d, three days prior to his death, Mr. Chambers signed a document of a testamentary nature, which was thereafter offered for probate as his last will and testament. John W. Chambers, a brother of the decedent, filed written objections to the probate of the alleged will, and a hearing was had, at the conclusion of which the court signed a decree establishing the document referred to as the last will and testament of Andrew H. Chambers, and appointing an administrator with the will annexed. From this decree, John W. Chambers has appealed, contending that the trial court erred in admitting the document to probate, for the reason that the same was not executed in accordance with the statutory requirements.

Appellant, John W. Chambers, is a brother of the deceased, and, if Andrew H. Chambers died intestate, is the sole heir at law. Edward P. Steere, the proponent of the will and a beneficiary thereunder, was related to the deceased by marriage. The signatures of appellant, John W. Chambers, and respondent, Edward P. Steere, both appear upon the will, which reads as follows:

"I, A. H. Chambers of my own free will and in my right mind this 21 day of February 1936 will and bequeath to Rose Steere the sum of $100.00 (one hundred dollars) and to Ruby Hammon the sum of $100.00 (one hundred dollars) and to Vic A. Skelton the sum of $100.00 (one hundred dollars) and to Molly L. Chambers the sum of $100.00 (one hundred dollars in gold) and to Miss Francis Leu the sum of $30.00 (thirty dollars in gold) and to Frank E. Steere his note and to Mr. and Mrs. C. O. Dayton their note and

to Edward P. Steere the sum of $500.00 (five hundred dollars) and Mrs. Anna Y. Morris'es note and to J. W. Chambers the sum of $500.00 (five hundred dollars) and to Rose Chambers the sum of $500.00 (five hundred dollars) and any residue to be divided pro-rata between all heirs mentioned herein as their interest shows.

"MARTHA COUSINS A. H. CHAMBERS
"J. W. CHAMBERS
"EDWARD P. STEERE"

 While both appellant and respondent are named in the will as beneficiaries thereunder, they are not thereby disqualified from testifying as witnesses concerning its execution. Under Rem. Rev. Stat., § 1408 [P. C. §10035], questions may arise as to what a witness who is also a beneficiary may receive under a will, but such a witness may undoubtedly testify in support of a document offered for probate.

 Concerning the execution of a will, Rem. Rev. Stat., § 1395 [P. C. § 10022], reads as follows:

"Every will shall be in writing signed by the testator or testatrix, or by some other person under his or her direction in his or her presence, and shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator or testatrix by his or her direction or request: . . ."

The will here in question contains no attestation clause whatsoever. The names of the persons who it is contended signed the document as witnesses thereto appear below the signature of the alleged testator, without any indication as to the purpose with which they signed or what particular significance they attached to the act of signing the document, either by themselves or by Andrew H. Chambers.

Our statute does not require that, in order to be valid, a will must be published by the testator; the

sole formal requirements being contained in the portion of the statute above quoted. Under the statute, the attestation of a will is the act of the witnesses, not that of the testator, although, of course, the act of the witnesses must be based upon the acts of the testator in executing the will and requesting that the witnesses sign as such.

It will be noted that appellant, one of the witnesses, is strongly opposed to the probate of the document as a will, and that respondent, Edward P. Steere, is also a witness and interested in maintaining the decree establishing the document as the will of Andrew H. Chambers.

Appellant, called as a witness by respondent, testified that, on the morning of February 22, 1936, he went to the hospital at Ellensburg to see his brother, who was on his death bed. The witness testified that he did not see the signature of his brother, Andrew H. Chambers, on the paper, and that, at the time the witness signed, the paper did not bear his brother's signature; that respondent Steere requested the witness to sign the paper, and that he complied with that request; that nothing was said in the presence of the witness indicating that the document in question was a will. Appellant's testimony, then, does not support the admission of the document to probate.

Martha Cousins, a nurse in the hospital, signed the document, and as she was apparently an entirely disinterested witness, her testimony is of importance. Miss Cousins testified that, on the morning in question, Mr. Steere, while in the corridor outside Mr. Chambers' room, asked her to go into the room and sign a paper as a witness; that she took a cardboard chart into the room to use as a support for the paper which was to be signed; that the document, which had already been prepared, was placed upon the board;

that Andrew H. Chambers signed it; and that the witness then attached her signature. She stated that Mr. Chambers remarked that his signature would not be very good, because his hand was a little shaky. She testified that, at the time, Mr. Chambers' mind was quite clear, and that apparently he knew what he was doing and what the witness was doing. She further stated that, after she had signed her name to the document, she asked if that was all, and that Mr. Andrew Chambers answered "Yes." She stated that, very soon after this, she left the room; that she did not see either appellant or respondent sign the document; and that respondent was the only person who suggested that she witness the paper; that she did not read the same and had no knowledge as to its nature; and that, during the period she was in the room, nothing was said which indicated that the document was a will.

Respondent Edward P. Steere testified to his intimate association with Mr. Andrew Chambers for many years; that he visited him in the hospital at Ellensburg and wrote the will at Mr. Chambers' dictation; that, on the morning of February 22d, he was present when Andrew Chambers signed the document in the presence of Miss Cousins, appellant and the witness; that, prior to this time, he had requested Miss Cousins to procure some ink and step into the room to witness Mr. Andrew Chambers' signature to his will, with which request Miss Cousins complied, as she stated; that, after Andrew Chambers signed the will, the witness said: "All right, nurse. You are next;" and that Miss Cousins then wrote her name on the paper, followed by J. W. Chambers and the witness; that the witness then took possession of the document, and in due time offered the same for probate.

On cross-examination, the witness testified that, at the time the document was signed and witnessed, nothing was said concerning the nature of the document, and that Mr. Chambers did not request any of the persons present to act as witnesses.

This being the situation presented by the evidence, can it be held that the trial court was justified in establishing the document as the will of Andrew H. Chambers, deceased?

██ The statute above quoted provides that a will must be

". . . attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator or testatrix by his or her direction or request: . . ."

The document now before us contains no attestation clause whatsoever, but, if competent witnesses present before the court testify that they subscribed their names to a document in the presence of the testator, and to facts which amount in law to an attestation, under the law of this jurisdiction it is not essential that formal words of attestation be attached to the will.

Appellant cites the opinion of this court *In re Chafey's Estate*, 167 Wash. 185, 8 P. (2d) 959, as laying down a contrary rule, but the opinion does not support the construction which appellant places thereon. It appeared that a document of a testamentary nature was offered for probate as a will. It bore the admitted signature of the testator and the signatures of two witnesses, but contained no attestation clause. Some evidence was offered which probably had the effect of identifying the signatures of the witnesses, but neither witness testified, as they were itinerant workers who, at the time the will was offered for probate, could not be located. An order

of the superior court refusing to admit the will to probate was affirmed, this court holding that, in the absence of an attestation clause, there is no presumption of regularity in the execution of a will, and that there was no *prima facie* evidence to the effect that the instrument was signed by the purported witnesses in the presence of the testator by his direction or request. The case, therefore, is distinguishable on the facts from the case at bar, as here all the witnesses were present before the court and testified in detail as to what occurred at the time the document was signed.

Appellant also cites the opinion of this court *In re Jones' Estate*, 101 Wash. 128, 172 Pac. 206, in which an order of the superior court rejecting a will was affirmed. In the case cited, the testimony offered in support of the will was clearly utterly insufficient, the name of one witness having been signed by another person, the purported witness never having seen the paper before it was shown to him in court, and the testator never having requested him to sign the same as a witness.

In Ballentine's Law Dictionary (edition 1930) the word "attestation" is defined as follows:

"The act of witnessing the actual execution of a paper and signing one's name as a witness to that fact. . . .

"Attestation and subscription differ greatly. Attestation is the act of the senses, subscription is the act of the hand; the one is mental, the other mechanical. See *Swift v. Wiley*, 40 Ky. (1 B. Monroe) 114, 117."

The following definition of the phrase "attestation of will" is also given:

"The act of witnessing the performance of the statutory requirement as to the valid execution of the will. There is some authority to the effect that there may be

a perfect attestation without subscription, on the theory that attestation is mental, and subscription is mechanical. See 28 R. C. L. 123.''

Our statute governing the execution of wills has reduced the formalities in connection therewith to a minimum. The statute does not require publication of the document by the testator as his will, or by its direct terms that the testator sign the will in the presence of the witnesses, or that the witnesses sign in the presence of each other. It does, however, require that the witnesses subscribe their names in the presence of the testator and at his direction or request. In the case at bar, the witnesses subscribed their names in the testator's presence. Whether or not it should be held that they did so at his request, is a question of some difficulty.

There can be no doubt but what Mr. Andrew Chambers' mental condition was good. He was a very sick man and about to die, but his mind was clear. There is no intimation to the contrary. While not of particular importance, it is proper to note that it cannot be held that the will was unreasonable, or that by it, Mr. Chambers disposed of his property in an unusual manner, or in any way other than one which would probably occur to him as proper and just. Evidently, he was fond of respondent, with whom he had been rather closely associated for many years. His brother (appellant) lives in Indiana, where he owns and operates a farm, and it does not appear that the brothers had been intimately associated.

In the case of *Points v. Nier,* 91 Wash. 20, 157 Pac. 44, Ann. Cas. 1918A, 1046, which was a will contest, this court sustained an order of the superior court admitting a will to probate, the will being attacked on the ground of faulty execution, as well as lack of testamentary capacity. The testatrix was very ill and

was unable to sign the document, making her mark thereto, with the assistance of a nurse. It was argued, *inter alia*, by the contestant that the testatrix had not requested the subscribing witnesses to sign their names. This court held that, from the evidence, such a request should be inferred, quoting from Schouler on Wills (3d ed.), § 329, the following:

"The request that witnesses should attest and subscribe one's will may be inferred from acts and conduct of the testator as well as his express words; the law regarding substance rather than literal form in such matters. It is not essential, therefore, that the testator should expressly ask the subscribing witnesses to attest his will. His acts, his gestures, may signify this request; whatever, in fact, implies his knowledge and free assent thereto. Indeed, the active part in procuring the witnesses and requesting them to attest and subscribe is not infrequently borne by some friend, near relative or professional counsel; and if such third person acts truly for the testator in his conscious presence and with his apparent consent, the legal effect is the same as though the testator himself had spoken and directed the business."

In the case of *In re Adams' Estate*, 120 Wash. 189, 206 Pac. 947, this court, in upholding a will, approved the rule laid down in the case cited, saying:

"A nurse was called and the formal execution of the will proceeded with, the nurse signing as one of the witnesses. The nurse testified that she was not requested by the testator to sign the will, and it is on her testimony that the claim of informality is founded. But as we said in *Points v. Nier*, 91 Wash. 20, 157 Pac. 44, Ann. Cas. 1918A 1046, the request that witnesses should attest and subscribe a will may be inferred from the acts and conduct of the testator as well as from his express words; that the law regards substance rather than literal form in such matters, and that it was not essential that the testator should expressly request the subscribing witness to attest his will; saying further,

that the active part of procuring the witnesses and requesting them to sign the will as such is not infrequently borne by the testator's professional counsel, and that if such counsel acts truly for the testator in his conscious presence and with his apparent consent, the legal effect is the same as though the testator himself had made the request. The soundness of this doctrine is not to be doubted."

In *In re Vaughn's Estate,* 137 Wash. 512, 242 Pac. 1094, it was held that a request that a will be witnessed should be inferred from what was said and done at the time of the execution of the will, and the will there in question was upheld.

The law of California in regard to the making of wills is in substance similar to the law of this state. In the case of *In re Silva's Estate,* 169 Cal. 116, 145 Pac. 1015, an informal will, signed by the testator, bearing the names of two witnesses without any attestation clause, was upheld. It appeared that the document was written by another, at the request of the testator, who signed it and passed it back to the man who wrote it, who signed as a witness, it being then signed by the second witness. The court noted that, while it did not appear that the testator had asked the witnesses to sign, or declared that the document was a will, it clearly appeared that the testator desired the persons to sign as witnesses, and that they did so sign "in compliance with his desire so manifested by his manner and actions."

In the case at bar, we are convinced from the record that the trial court correctly held that, from all the facts and circumstances, a request on the part of Mr. Chambers that the persons whose names appear on the document sign the same as witnesses to his will, should be inferred. Formal words of attestation are not necessary when the witnesses are present and testify, and when it appears from such testimony that they did

in fact attest the will. We hold that the record before us shows a proper attestation, and, the requirements of the statute having been complied with by the signing of the instrument by the testator and the subscribing of the witnesses' names thereto, in the presence of the testator and at his request, the trial court properly admitted the will to probate.

■ Prior to the time the will was offered for probate, the court had appointed, on the nomination of appellant here, a special administrator of the estate. In the decree admitting the will to probate, the court appointed another person administrator with the will annexed, refusing to appoint appellant's nominee, to that position. On this appeal, error is also assigned upon the refusal of the trial court to appoint appellant's nominee.

The statute does not give a surviving brother, even though the sole heir at law, the right to nominate an administrator, even though the brother might have the right to be himself appointed. Appellant cites Rem. Rev. Stat., § 1417 [P. C. § 9933], which reads as follows:

"After probate of any will, letters testamentary shall be granted to the persons therein appointed executors. If a part of the persons thus appointed refuse to act, or be disqualified, the letters shall be granted to the other persons appointed therein. If all such persons refuse to act, letters of administration with the will annexed shall be granted to the person to whom administration would have been granted if there had been no will."

Appellant contends that, under this section, the trial court should have appointed his nominee. Appellant not having requested that he himself be appointed, we cannot hold that the trial court committed reversible error in disregarding appellant's request and appointing another administrator with the will annexed. The

selection of such an officer rested largely within the discretion of the trial court, and we find nothing which calls for reversal of the trial court's ruling in this particular.

The decree appealed from is in all things affirmed.

MAIN and BLAKE, JJ., concur.

HOLCOMB, J., concurs in the result.

MILLARD, C. J., dissents.

