IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the | ) | No.  35270-6-III |
| | ) | |
| ESTATE OF MABEL MEEKS, and, | ) | |
| L/M MEEKS NO. 1 TRUST. | ) | PUBLISHED OPINION |

SIDDOWAY, J. — Lisa Wuerch, successor trustee of the L/M Meeks No. 1 Trust and personal representative of the estate of Mabel Meeks, appeals the trial court's reformation of Ms. Meeks's 1994 will and its award of attorney fees and costs to the Fred Hutchinson Cancer Research Center (Fred Hutchinson).  Clear and convincing evidence supported Ms. Meeks's effort to make changes to her estate plan.  But evidence does not support the reformation of her 1994 will.  In substance, the trial court reformed a 2005 attempt at what needed to be, but was not, a testamentary transfer.  We are constrained to reverse.  We remand the issue of any attorney fees and costs to be awarded to the parties to the trial court.

FACTS AND PROCEDURAL BACKGROUND

*Estate Planning History*

In March 1994, Lloyd and Mabel Meeks executed a trust agreement creating the L/M Meeks No. 1 Trust and identifying themselves as co-trustees. From the schedule of assets assigned and transferred to the trust, it appears they contributed to the trust all or most of their bank accounts, certificates of deposit, real estate, vehicles, securities, and personal property. On the same day, Mr. and Ms. Meeks executed twin wills, simple in form, which recognized as valid any written disposition of tangible personal property they might later prepare, but that otherwise gave, devised and bequeathed their estates to the trust.

The first purpose of the trust was to support the grantors during their joint lifetimes and the survivor following the death of the first to die. Upon that first death, the trust contained a common tax planning directive to fund a "By-Pass" trust with an amount of assets that would take full advantage of the unified credit applicable to federal gift and estate taxes. Any remaining assets were to be placed in a separate trust qualifying for the unlimited federal estate tax marital deduction. Assets remaining in either of the two trusts following the death of the second grantor were to be distributed 80 percent to the Meeks's

only child, Mary, with the remainder to be distributed to several individuals and Catholic charities identified by the trust.

During the grantors' joint lifetimes, the terms of the trust allowed for its revocation, modification, and for assets to be withdrawn. "Upon the death of the first Grantor," however, the trust provided, "this Agreement shall not be revocable in whole or in part nor subject to amendment." Clerk's Papers (CP) at 8. Notwithstanding the irrevocable character of the trust following the death of the first grantor, the trust agreement did provide the surviving grantor with a limited power of appointment over the By-Pass trust. The limited power could be exercised by the surviving grantor only in favor of lineal descendants of the Meeks's marriage, spouses of their lineal descendants, or tax-exempt religious, charitable, scientific, literary, or educational organizations. The trust further provided that the power "may be exercised only in a provision specifically describing this power of appointment contained in the Last Will of the surviving Grantor." CP at 10.

Lloyd Meeks was the first to die, in September 2002. It is undisputed on appeal that all of the Meeks's real and personal property had been transferred to the trust before his death. While the record does not reveal the size of his estate, it is undisputed on appeal that it was less than the amount excluded from federal estate taxation at the time,

3

meaning that all of the assets should have been segregated into a By-Pass trust. Ms. Meeks did not comply with the trust directive to retitle trust assets as assets of a By-Pass trust.

Not long after Mr. Meeks's death, Ms. Meeks contacted the lawyer who had prepared the couple's estate planning documents about changing the distribution of the trust assets following her death. Ms. Meeks wished to slightly reduce the percentage bequest to Mary to 75 percent of the estate, to cap all of the existing bequests by dollar amounts, to reduce some bequests, add two additional individual beneficiaries, and leave any remaining assets to Fred Hutchinson for breast cancer research. (Ms. Meeks was a breast cancer survivor.) Rather than prepare a new will or codicil to Ms. Meeks's 1994 will exercising her limited power of appointment, the lawyer prepared a first amendment to the trust. Ms. Meeks executed the amendment in December 2002.

In 2005, Mary died of glioblastoma multiforme cancer. After Mary's death, Ms. Meeks contacted her lawyer again, to address further changes to the distribution of the trust assets, including what she wanted done with the majority of the estate that had been intended for Mary. She wished to add a new individual beneficiary, make relatively small bequests to two additional charities, and make a large, $100,000 bequest for a scholarship fund for working single mothers to be established at the Community Colleges of Spokane,

where Mary had worked.  She wished for the larger residual estate to be distributed one-half to Fred Hutchinson and one-half to its research partner, the University of Washington, solely for the research of glioblastoma multiforme cancer.  Ms. Meeks's lawyer prepared a second amendment of the trust that made these changes.  Ms. Meeks executed the second amendment in October 2005.

Ms. Meeks died in March 2015.  She had never executed a new will or codicil exercising the limited power of appointment provided by the trust agreement.

*Procedure*

Lisa Wuerch, a niece of Mr. and Ms. Meeks, was named a successor personal representative by Ms. Meeks's will and a successor trustee by the trust.  In May 2015, she filed a petition to open trust file in which she sought a judicial determination of the validity and enforceability of the first and second trust amendments, eventual approval of an accounting, and compensation for her service as trustee.  She sought and obtained court approval of the identity of the individuals and charities entitled to notice of the proceeding.  The court later certified Ms. Wuerch's status as successor trustee and approved reasonable compensation subject to her maintaining true and accurate contemporaneous records.

Fred Hutchinson obtained a court order authorizing the Meeks's estate planning lawyer to produce his records pertaining to Ms. Meeks's estate plan. He produced all records other than his work product. Based on his records and affidavits from other witnesses, Fred Hutchinson moved the court for an order confirming the validity of the trust amendments.

In its legal briefing to the court, Fred Hutchinson argued first that the court should reform the *trust* under RCW 11.96A.125—specifically, that it should "reform the provision purporting to prohibit amendments to the Meeks Trust and find that Ms. Meeks was entitled to amend the Meeks Trust in order to make [Fred Hutchinson] a beneficiary of the Trust." CP at 155. RCW 11.96A.125 provides in relevant part:

> The terms of a will or trust, even if unambiguous, may be reformed by judicial proceedings under this chapter to conform the terms to the intention of the testator or trustor if it is proved by clear, cogent, and convincing evidence that both the intent of the testator or trustor and the terms of the will or trust were affected by a mistake of fact or law, whether in expression or inducement.

Fred Hutchinson emphasized a report from Ms. Wuerch's lawyer that in his conversations with the estate planning lawyer, the estate planner had characterized the trust's prohibition on amendment following the first death as a "scrivener's error." CP at 304. According to Fred Hutchinson, "This information is strong evidence that Mr. and Ms. Meeks did not intend to limit Ms. Meek's ability to amend the dispositive provisions

for charitable remainder beneficiaries following Mr. Meeks's death." CP at 85 (boldface omitted). Fred Hutchinson conceded that the estate planning lawyer later denied ever admitting to a scrivener's error. *Id.* at 150. But it continued to argue that the court could infer an intent on the part of Mr. and Ms. Meeks that the trust was to remain revocable following the death of the first grantor, allowing the surviving grantor to modify the trust's distributions to charitable organizations.

Fred Hutchinson also argued that the court could reform the trust under RCW 11.96A.127 to order distribution in a manner consistent with the trustor's charitable purposes.

As an alternative to these two primary arguments for reforming the trust, Fred Hutchinson asked that the court reform Ms. Weeks's last will and testament under the same two statutory provisions to conform to her clearly expressed charitable intentions.

At the time of the hearing on Fred Hutchinson's motion, the trial court announced that "[b]ased upon what has been provided, the Court, at this point, is able to find by clear, cogent, and convincing evidence that the intent of both Mr. and Mrs. Meeks was to allow for the power of appointment for the surviving spouse, that Ms. Meeks was the surviving spouse, and she tried to exercise the power of appointment." CP at 282-83. It further found, however, that "[b]ecause the original trust isn't to be amended, I don't

7

know that it'd be appropriate for the Court to reform the trust. That would be an amendment to it. I think the more appropriate thing to do here is have the Court reform the will to reflect the designated beneficiaries as requested by Ms. Meeks, which do not conflict with the original trust." *Id.* at 283.

Following supplemental briefing on complications presented by some of Ms. Meeks's other beneficiary changes, the trial court entered supplemental findings and conclusions directing Ms. Wuerch as to the distributions to be made. It granted Fred Hutchinson's request for an award of its attorney fees and costs from the trust residue. Its final written findings, conclusions and order contain the following reformation provision:

> The Court REFORMS Ms. Meeks' Last Will and Testament so as to incorporate her exercise of the power of appointment in favor of the charities delineated in the Second Amendment to the Meeks Trust.

CP at 436.

The trustee appeals.

## ANALYSIS

The trustee makes a number of arguments on appeal. We find only one of her arguments persuasive, but it is dispositive. As argued by the trustee, "RCW 11.96A.125 does not give a party or the court the right to circumvent the statutes that prescribe the processes for creating, and executing instruments, and executing specific rights." Br. of

8

Appellant at 19-20.  We agree.  The superior court's power of reformation under RCW 11.96A.125 enables it to reform a valid trust to conform to the grantor's intent in executing the trust.  It enables the court to reform a valid will to conform to the testator's intent in executing the will.  It does not enable the court to import into a valid will terms that conform to the testator's intent in executing a different document at a later date that was not executed with the formalities of a will.

The "will or trust" whose terms may be reformed under RCW 11.96A.125 must be the same "will or trust" whose terms "were affected by a mistake of fact or law, whether in expression or inducement."  This is plain from the fact that the instrument's terms are being "reformed" to "conform" to the testator's or trustor's intent, making it clear that the intent must have existed at the same time that the mistake of fact or law caused the intent to be imperfectly expressed in the instrument.

This is also clear from the sources of law on which RCW 11.96A.125 was based.  The provision was one of several added to Title 11 RCW at the request of the Washington State Bar Association, which appointed a task force to review the Uniform Trust Code proposed by the National Conference of Commissioners on Uniform State Laws and recommend amendments and additions to Washington's trust laws.  *See* FINAL B. REP. ON SUBSTITUTE HB 1051, 62d Leg., Reg. Sess. (Wash. 2011); LAWS OF 2011, ch. 327, § 11.

9

Both section 415 of the Uniform Trust Code and section 2-805 of the Uniform Probate

Code, on which the Washington statute is patterned, were based on section 12.1 of the

*Restatement (Third) of Property: Wills and Other Donative Transfers* (Am. Law Inst.

2003).  *See* UNIF. PROBATE CODE § 2-805 (amended 2010), 8 Pt. 1 U.L.A. 335-36 (2013).

> As the comments to section 12.1 to the *Restatement* state:
>
> An order of reformation alters the text of a donative document so that it
> expresses the intention it was intended to express.  Thus, unless otherwise
> stated, a judicial order of reformation relates back and operates to alter the
> text as of the date of execution rather than as of the date of the order or any
> other post-execution date.

Cmt. f.  Limitations on reformation are discussed by comment h to section 12.1:

> Reformation is a rule governing mistakes in the content of a donative
> document, in a case in which the donative document does not say what the
> transferor meant it to say.  Accordingly, reformation is not available to
> correct a failure to prepare and execute a document (Illustration 1).[1]  Nor
> is reformation available to modify a document in order to give effect to the

---

[1] Illustration 1 states:

G decided to leave his estate to his niece, X.  G orally communicated his
intent to X, mistakenly thinking that he could effectuate his intent in this
manner.  Thereafter G died intestate, leaving his sister, A, as his sole heir.

Because G did not reduce his testamentary intent to writing and
execute it as required by the Statute of Wills, X cannot invoke the
reformation doctrine to implement G's true intent.  G's mistake did not
refer to specific terms in a donative document, because G never executed
a document.  There is no document to reform.

donor's post-execution change of mind (Illustration 2)[2] or to compensate for other changes in circumstances.

The trial court's order of reformation in this case reformed Ms. Meeks's 1994 will, but no evidence was presented, let alone clear and convincing evidence, that Ms. Meeks intended in March 1994 for her last will and testament to make any distributions other than to pour whatever assets existed in her estate into the trust. And no evidence was presented, let alone clear and convincing evidence, that she intended in March 1994 to make the distributions she identified to her estate planning lawyer 11 years later, which he documented in the second amendment to the trust.

Fred Hutchinson understandably advocated primarily for reformation of the trust, to eliminate its prohibition on revocation. If, as the estate planning lawyer was alleged to

---

[2] Illustration 2 states:

G validly executed a will that devised his estate to his sister, A. After execution, G formed an intent to alter the disposition in favor of A's daughter, X, in the mistaken belief that he could substitute his new intent by communicating it to X orally.

G's oral communication to X does not support a reformation remedy. Although a donative document exists that could be reformed by substituting "X" for "A," the remedy does not lie because G's will was not the product of mistake. The will when executed stated G's intent accurately. G's mistake was his subsequent failure to execute a codicil or a new will to carry out his new intent. This is a mistake of the same sort that G made in Illustration 1 in not making a valid will in the first place.

have said, the prohibition on revocation was a scrivener's error, it could be argued as

clear and convincing evidence that Mr. and Ms. Meeks believed in March 1994 that the

surviving grantor would be able to amend the trust to change its beneficiary designations.

But the trial court was not persuaded. The estate planning lawyer denied admitting to a

scrivener's error. And the trial court concluded that "the original trust [wasn't] to be

amended." CP at 283.

An additional but unavailing approach to solving the problem is to reform the

second amendment to the trust under RCW 11.96A.125 and treat it as a codicil,[3] which is

what, in substance, the trial court attempted to do. If the second amendment to the trust

had met the formalities required of a codicil, we believe the trial court could have

concluded that in substance, if not in form, it *was* a codicil and an exercise of Ms.

Meeks's limited power of appointment. But it does not satisfy the required formalities.

RCW 11.12.020(1) requires that a will satisfy three formalities:

> Every will shall be [1] in writing [2] signed by the testator or by some other
> person under the testator's direction in the testator's presence, and shall be
> [3] attested by two or more competent witnesses, by subscribing their names
> to the will, or by signing an affidavit that complies with RCW 11.20.020(2),
> while in the presence of the testator and at the testator's direction or
> request.

---

[3] "'Codicil' means a will that modifies or partially revokes an existing earlier will." RCW 11.02.005(2).

12

Washington decisions recognize that with this statute, "requirements for valid will execution have been reduced to a minimum in Washington." *In re Estate of Price*, 73 Wn. App. 745, 751, 871 P.2d 1079 (1994) (citing *In re Estate of Chambers*, 187 Wash. 417, 425, 60 P.2d 41 (1936)). The statutory purposes underlying the minimal formality requirements that remain are "to ensure that the testator has a definite and complete intention to dispose of his or her property and to prevent, as far as possible, fraud, perjury, mistake and the chance of one instrument being substituted for another." *In re Estate of Malloy*, 134 Wn.2d 316, 322-23, 949 P.2d 804 (1998). Neither of Ms. Meeks's two trust amendments were attested by two or more competent witnesses as required by RCW 11.12.020(1).

The failure of the second amendment to satisfy the formalities of a will is fatal. Our facts fall squarely within the problem identified in one of the examples to section 12.1 of the *Restatement*. "Although a donative document exists that could be reformed by substituting 'X' for 'A,' the remedy does not lie because G's will was not the product of mistake. The will when executed stated G's intent accurately. G's mistake was his subsequent failure to execute a codicil or a new will to carry out his new intent." *Id.* at cmt. h., illus. 2.

In many if not most cases in which a will is held invalid for failure to satisfy the required formalities, the proponent of the will can make the case that the failed instrument clearly and convincingly reflects the intention of the would-be testator. After all, the would-be testator thought she or he was executing a will. If the superior court were allowed to "reform" an earlier, validly executed will by importing into it the different terms of the invalid will, the statutory purpose for requiring the minimal formalities required by Washington law would be frustrated. It is not a purpose of RCW 11.96A.125 to excuse a failure to satisfy those formalities. The statute does not operate to do so.

In addition to seeking reversal of the reformation order, the trustee asks us to reverse the award to Fred Hutchinson of its reasonable attorney fees and costs. Although the trial court awarded the fees and costs on the rationale that Fred Hutchinson was the successful party, its discretion in awarding fees and costs under RCW 11.96A.150 is extremely broad. We therefore reverse the award as predicated on the successful results obtained by Fred Hutchinson in the trial court, but with leave to the trial court to exercise its discretion to order attorney fees paid in such amount, if any, that the court determines to be equitable.

14

No. 35270-6-III
*In re Trust of Meeks*

We reverse the trial court's findings, conclusions and order and remand for further proceedings consistent with this opinion.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Pennell, J.

15