[No. 74009-7.   En Banc.]
Argued March 11, 2004.     Decided December 9, 2004.

*In the Matter of the Estate of* MARGARET BLACK.

DOUGLAS WILLIAM CARLTON ET AL., *Respondents,*
v. MYRNA BLACK, *Petitioner.*

SANDERS and CHAMBERS, JJ., dissent by separate opinion.

*Carl J. Carlson*, for petitioner.

*G. Scott Marinella* (of *Nealy & Marinella*) and *Michael E. De Grasse*, for respondents.

¶1 OWENS, J. — The Columbia County Superior Court admitted a 1992 will, signed by Margaret Black, to probate shortly after Margaret's death in October 2000. The court subsequently admitted a 1993 lost will, purporting to be

Margaret's last will and testament, on summary judgment and awarded attorney fees to Richard Burns, the personal representative under the 1992 will. On appeal, the Court of Appeals reversed the summary judgment and the attorney fee award and remanded the case with instructions that all issues pertaining to the will should be decided in one proceeding. We affirm the Court of Appeals but base our decision on the grounds that there are genuine issues of material fact as to the execution of the lost will that must be decided at a trial. We also clarify the Court of Appeals' statements regarding the standard of proof necessary to admit lost wills and clarify the role of res judicata in probate proceedings.

## FACTS

¶2 On October 11, 2000, Margaret Black, a resident of Columbia County, Washington, died, leaving property subject to probate. A will executed on December 10, 1992, was admitted to probate on October 12, 2000, and Richard Burns was appointed as the personal representative. The 1992 will requested Burns be appointed as the personal representative and left all of Margaret's farm property to Douglas William (Bill) Carlton. The residuary of the estate was split into thirds among Eugene Ayers or upon his death to his daughter, Bill Carlton, and the First Christian Church of Dayton. The will explicitly excluded Myrna Black, Margaret's daughter. The 1992 will was signed by Margaret, signed by two witnesses, and included an attached affidavit of the subscribing witnesses.

¶3 Subsequently, Myrna Black petitioned the court to admit a 1993 lost will to probate. Myrna also contested the 1992 will under RCW 11.24.010 to prevent the four-month statute of limitations from running in case her petition to probate was unsuccessful. The 1993 will appointed Myrna as the personal representative and transferred all of Margaret's property to Myrna, which was in direct contradiction with the 1992 will. An unsigned draft of the will

included a place for Margaret to sign, an attestation clause with a place for two witnesses to sign, and a certificate of the subscribing witnesses describing the legal requirements of the will's execution. On August 7, 2001, Myrna filed a motion for summary judgment to admit the 1993 lost will.

¶4 Affidavits by Robert Reiter, Janet Taylor, Paul Blauert, and Myrna Black were submitted in support of the lost will.[1] Robert Reiter's affidavit states the following. Reiter, a California attorney and Myrna's friend, accompanied Myrna to visit her mother in August 1993. Myrna and Reiter obtained the unexecuted 1993 will from Paul Blauert in Seattle, Washington, and then continued to Walla Walla, Washington, where Margaret resided. Reiter discussed the 1993 will with Margaret, Margaret read the will, and Reiter verified that the will reflected her wishes. Myrna arranged for a notary public to attend the execution of the will in order to notarize the will and other documents. After reviewing Margaret's notarized power of attorney, allegedly signed on the same day as the will, August 14, 1993, Reiter remembered the notary was Janet Taylor. After Margaret reviewed and discussed the will, she initialed each page and signed the will in the presence of Reiter and Taylor. Reiter and Taylor then signed as witnesses. Attached to his affidavit is a copy of the will Reiter remembers Margaret executing. Reiter also submitted a declaration to the court stating that he personally read the signed will and that this was the will Myrna received in Seattle. Subsequently, Reiter and Myrna returned to Seattle, and Myrna gave Blauert the will.

¶5 In his affidavit Blauert stated that he prepared the 1993 will at Myrna's request, and the provisions in the will

---

[1] Although Myrna Black's affidavit is part of the record, the lower courts did not consider the affidavit in order to avoid potential problems with the deadman's statute, RCW 5.60.030. Clerk's Papers (CP) at 18-27; *see generally In re Estate of Shaughnessy*, 97 Wn.2d 652, 648 P.2d 427 (1982) (explaining and applying the deadman's statute), *aff'd* 104 Wn.2d 89, 702 P.2d 132 (1985). Whether Myrna's affidavit should be considered was not properly raised in the petition for review or cross-petitions to this court. Therefore, we will not consider Myrna's affidavit.

attached to his affidavit are the same as those in the will given to Myrna in August 1993. Myrna returned this same document to Blauert on August 15, 1993. Blauert noticed the will was executed on August 14, 1993, and it was signed by two attesting witnesses. The original will and another document were placed in a file. In October 2000, Myrna contacted Blauert requesting the will. Blauert could not find the file and stated that when he retired in January 1996 he had discarded most of his paper files. A computer disk with a copy of the will and a transmittal letter was found, and from this Myrna was sent an unsigned copy of the will. Although Blauert may have sent Myrna the original will, currently the original 1993 will appears to be lost.

¶6  Janet Taylor, the notary public and the other witness to the 1993 will as identified by Reiter, does not recall witnessing the 1993 will or any of the people involved. Taylor was a notary public in 1993, and she recognized her signature on Margaret's durable power of attorney, executed August 14, 1993. She believed she personally witnessed Margaret sign this document because she did not notarize documents for people she did not know unless the person was present. However, Taylor has no recollection of witnessing the will, or speaking to Myrna, Margaret, or Reiter.

¶7 Despite Burns' and the beneficiaries' objections to summary judgment, Judge William Acey granted Myrna's motion for summary judgment admitting the lost will to probate, awarded attorney fees to Burns, and denied Myrna's attorney fees until after adjudication of any challenges to the lost will. In his oral opinion, Judge Acey noted that the summary judgment was granted based on Reiter's and Blauert's affidavits, and he did not make a finding that Taylor had signed the will. Verbatim Report of Proceedings (VRP) (Sept. 26, 2001) at 15, 17. The beneficiaries and Burns appealed the summary judgment order, and Myrna cross-appealed the attorney fee award. The Court of Appeals reversed summary judgment, reversed the attorney

fee award to Burns, and remanded the case with instructions to resolve all issues regarding the will in one proceeding. *In re Estate of Black*, 116 Wn. App. 476, 480, 488, 66 P.3d. 670 (2003). Myrna filed a petition for review with this court, and Burns and the beneficiaries filed cross-petitions for review. We granted review of all issues on December 24, 2003.[2] We affirm the Court of Appeals on different grounds and clarify the court's statements regarding burdens of proof and res judicata in probate proceedings.

## ISSUES

¶8  1. Whether the Court of Appeals erred regarding the necessary burden of proof required to admit lost wills.

¶9  2. Whether summary judgment admitting Margaret's lost will was properly reversed in light of genuine issues of material fact regarding execution of the lost will.

¶10  3. Whether the Court of Appeals erred in its analysis of the role res judicata plays in probate proceedings.

¶11  4. Whether the Court of Appeals erred in ordering all issues involving Margaret's 1992 and 1993 wills resolved in one proceeding on remand.

¶12  5. Whether any party is entitled to attorney fees.

## STANDARD OF REVIEW

■■ ¶13 On summary judgment, we "engage[ ] in the same inquiry as the trial court." *Failor's Pharmacy v. Dep't of Soc. & Health Servs.*, 125 Wn.2d 488, 493, 886 P.2d 147 (1994). We will not resolve factual issues, but rather must determine if a genuine issue as to any material fact exists. *Balise v. Underwood*, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). "A material fact is one upon which the outcome of the litigation depends." *Id*. The moving party has the burden of proving there is no genuine issue of material fact

---

[2] The petition and cross-petition for review were mistakenly denied on December 2, 2003. Our December 24, 2003, order amended the previous order and granted review.

and all inferences are construed in the light most favorable to the nonmoving party. *Id.; see also* Civil Rules (CR) 56(c).[3] If the moving party meets its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *La Plante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975); *Snohomish County v. Rugg*, 115 Wn. App. 218, 224, 61 P.3d 1184 (2002) (stating that a nonmoving party must set forth evidentiary facts, not suppositions, opinions, or conclusions); *see also* CR 56(e). Only where there is no genuine issue of material fact and reasonable people could reach "but one conclusion" from all of the evidence is summary judgment appropriate. *Barrie v. Hosts of Am., Inc.*, 94 Wn.2d 640, 642, 618 P.2d 96 (1980); *Balise*, 62 Wn.2d at 199. Further, it should be noted that proceedings where a will is being challenged are equitable in nature and are reviewed de novo upon the entire record. *In re Estate of Ney*, 183 Wash. 503, 505, 48 P.2d 924 (1935).

## ANALYSIS

### A. Standard of Proof for Lost Wills

¶14 The Court of Appeals incorrectly stated that a lost will may be admitted to probate only if the will is in existence at the time of the testator's death and the will's contents are proved " 'clearly and distinctly' by the testimony of at least two persons." *Black*, 116 Wn. App. at 484 (quoting *In re Estate of Nelson*, 85 Wn.2d 602, 605, 537 P.2d 765 (1975)). *Nelson* interpreted an earlier version of the lost will statute, RCW 11.20.070. *Nelson*, 85 Wn.2d at 605. Since *Nelson*, the legislature has amended the statute and deleted the requirement that the will must be in existence at the time of the testator's death. *See* LAWS OF 1994, ch. 221, §§ 20, 75. The current statute also states that the contents "must be proved by clear, cogent, and convincing evidence, consisting at least in part of a witness to either its contents

---

[3] It should be noted that the trial court erroneously and specifically stated that inferring language in the light most favorable to the nonmoving party did not technically apply to this case. VRP (Sept. 26, 2001) at 32.

or the authenticity of a copy of the will." RCW 11.20.070(2). While the legislature may amend a statute, the court must interpret the present language of the statute and may not "rewrite explicit and unequivocal statutes." *State v. Mollichi*, 132 Wn.2d 80, 87-88, 936 P.2d 408 (1997). The Court of Appeals erred in reciting the statutory requirements to admit a lost will to probate and the burden of proof necessary to prove the contents of a lost will.

¶15 Further, the Court of Appeals erred in stating that "[p]roof of the execution of a lost will is by a preponderance of the evidence." *Black*, 116 Wn. App. at 483 (citing *Nelson*, 85 Wn.2d at 607-08; *In re Estate of Peters*, 43 Wn.2d 846, 860, 264 P.2d 1109 (1953)). The Court of Appeals cites *Nelson* and *Peters* for this proposition, but neither case supports this burden of proof. In *Nelson*, the formalities of execution of the will were not contested, and the court used the clear preponderance of the evidence standard to determine if the will was in existence at the time of the testator's death, a requirement no longer applicable under the current statute. 85 Wn.2d at 606-08. *Peters*, interpreting a former version of RCW 11.20.070, states that the clear and distinct burden of proof relates only to the contents of the will, and proof as to the execution of the will is found in the first paragraph of the statute. 43 Wn.2d at 860. However, the execution of the will was not contested in *Peters*, paragraph one of the statute does not provide a standard for the appropriate burden of proof, and the court provides no standard for proving the execution of a will. *Id.* Although the court later mentions the preponderance of the evidence standard, this is in regard to whether the testator lacked capacity and does not strongly support the proposition that that standard should apply to the execution of a will generally. *Id.* at 861; *see also In re Estate of Gardner*, 69 Wn.2d 229, 235-36, 417 P.2d 948 (1966) (quoting *Peters*, 43 Wn.2d at 860, for the proposition that the " 'clear and distinct' " burden of proof refers only to proving the contents of the will, but not stating the applicable burden of proof to be applied to the execution of a will); *In re Estate of Neubert*, 59 Wn.2d 678, 685, 369 P.2d 838 (1962) (same).

¶16 "A statute must be read as a whole giving effect to all of the language used," and each provision must be harmonized with other provisions to " 'insure proper construction of every provision.' " *State v. Young*, 125 Wn.2d 688, 696, 888 P.2d 142 (1995) (quoting *Addleman v. Bd. of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986)). Reading RCW 11.20.070 as a whole supports using the "clear, cogent, and convincing" burden of proof for the execution and the content of a will. Case law does not support allowing a lower burden of proof for the execution of a lost will than is used for proving the contents of a lost will. *See In re Last Will & Testament of Borrow*, 123 Wash. 128, 130, 212 P. 149 (1923) (applying the same burden of proof to the execution and the contents of a lost will).[4] Therefore, the appropriate burden of proof pertaining to the execution of a lost will should be "clear, cogent, and convincing."

## B. Admission of the 1993 Lost Will

¶17 The Court of Appeals applied RCW 11.20.070 to determine if the 1993 will should be admitted to probate and found that Myrna had met the technical requirements of the statute. *Black*, 116 Wn. App. at 484. However, the court concluded that summary judgment was not appropriate because, based on the doctrine of res judicata, summary judgment would not allow disputed issues to be argued in a later will contest, which would "inadvertently short circuit[ ] the statutory probate scheme." *Id.* at 484-86. The Court of Appeals correctly applied RCW 11.20.070 but incorrectly held that Myrna had met the technical requirements of the statute. The court also erred in its application of res judicata, and that issue will be discussed below. *See infra* section C.

---

[4] *See also* R.D. Hursh, Annotation, *Proof of Due Execution of Lost Will*, 41 A.L.R.2d 393 § 4 (1955) (noting that "[t]he judicial consensus as to the quantum of proof which a proponent of a lost will must bring forth to prove that an alleged lost will was duly executed would appear to be that evidence of due execution must be clear and satisfactory").

## 1. Applicable Statutes

█ █ ¶18 At the outset, we must determine which statutes apply to this case. We decide issues of statutory construction de novo. *In re Estate of Baird*, 131 Wn.2d 514, 518, 933 P.2d 1031 (1997). Statutes relating to the same subject are construed together and, in " 'ascertaining legislative purpose . . . are to be read together as constituting a unified whole, to the end that a harmonious, total statutory scheme evolves.' " *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 146, 18 P.3d 540 (2001) (quoting *State v. Wright*, 84 Wn.2d 645, 650, 529 P.2d 453 (1974)). When more than one statute applies, the specific statute will supersede the general statute. *See Hallauer*, 143 Wn.2d at 146 (stating that when statutes conflict, the specific statute supersedes the general statute); *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 630, 869 P.2d 1034 (1994).

█ ¶19 Here, we need consider only two statutes, RCW 11.20.070 and RCW 11.12.020. Although RCW 11-.20.020 explains how a party may petition a court to admit a will to probate in an ex parte proceeding, here the 1993 will is a lost will; therefore, the specific lost will statute, RCW 11.20.070, and not the general statute applies.[5] RCW 11.20.070(1) states that the court "may take proof of the execution and validity of the will and establish it" after notice has been given to all parties. To determine whether the will was properly executed, the court must use RCW 11.12.020, which describes the proper execution of all wills. *See In re Estate of Harris*, 10 Wash. 555, 559, 39 P. 148 (1895) (discussing former RCW 11.12.020 and stating that a

---

[5] Although RCW 11.20.020, the statute used to admit new wills, is inapplicable here, we note that the Court of Appeals incorrectly stated that "the petition to probate the new will should not be granted ' "except upon the clearest evidence." ' " *Black*, 116 Wn. App. at 484 (quoting *In re Estate of Elliott*, 22 Wn.2d 334, 352, 156 P.2d 427 (1945) (quoting *Waters v. Stickney*, 94 Mass. (12 Allen) 1, 15 (1866))). The Court of Appeals failed to note that only *Waters*, a Massachusetts case quoted in *Elliott*, and not *Elliott*, held that the "clearest evidence" standard should be used. *Elliott*, 22 Wn.2d at 352. Further, the language of RCW 11.20.020 does not require petitioners to meet a "clearest evidence" standard. Therefore, the Court of Appeals' "clearest evidence" standard is not supported by the cited authority.

lost will must have the same RCW 11.12.020 requirements as all other wills); *Neubert,* 59 Wn.2d at 685 (finding evidence sufficient to establish execution of a lost will under RCW 11.12.020).[6] The petitioner must prove the execution and the contents of the will "by clear, cogent, and convincing evidence." RCW 11.20.070(2).

2. Technical Requirements: Execution of the Lost Will

▇▇▇ ¶20 RCW 11.12.020(1) requires all wills to be in writing, "signed by the testator or by some other person under the testator's direction in the testator's presence," and attested to by *two* witnesses in the presence of the testator and at the testator's request. The witnesses may attest to the will by subscribing their names to the will or by signing an affidavit in compliance with RCW 11.20.020(2). Citing *In re Estate of Campbell,* 47 Wn.2d 610, 615-16, 288 P.2d 852 (1955), the Court of Appeals stated that "[a]n attestation clause is prima facie evidence that the [will] was signed by the witnesses in the presence of the testatrix and at her direction." *Black,* 116 Wn. App. at 484. However, in *Campbell,* it appears that the will presented to the court included the testator's signature and a signed attestation clause.[7] 47 Wn.2d at 614-15; *see In re Estate of Chafey,* 167 Wash. 185, 189, 8 P.2d 959 (1932) (stating that an attestation clause *with a genuine signature of the testator* is prima facie evidence of the will's execution); *see also In re Estate of*

---

[6] RCW 11.12.020 incorporates RCW 11.20.020(2)'s affidavit requirements as a way a party may attest to the will. Therefore, RCW 11.20.020(2) applies for this purpose only. If a witness is unable or incompetent to testify, or is absent from the state, RCW 11.20.040 may apply. However, here no witnesses are absent, incompetent, or unable to testify. Finally, once the will is admitted to probate, any interested person may contest the will within four months of admission under RCW 11.24.010. However, technically this proceeding is not a will contest, since the parties are challenging the admission of the 1993 will during the offer to probate the will (e.g., it has not been decided whether the 1993 will is admitted yet). Therefore, RCW 11.24.010 does not apply.

[7] The testimonial clause and attestation clause had dates written in them. *Campbell,* 47 Wn.2d at 614-15. Although it appears the dates had been altered or written in a different ink than the body of the will, it may be inferred that the clauses were signed, since no date at all would appear unless the clauses had been signed (i.e., the date is filled in at the same time the clause is signed). *See id.*

*Alfaro*, 301 Ill. App. 3d 500, 504, 703 N.E.2d 620, 234 Ill. Dec. 759 (1998) (stating that an attestation clause with genuine signatures on the instrument is prima facie evidence that the will was properly executed). Here, the computer copy of the will does not contain any signatures by the testator or the witnesses. Therefore, the unsigned will and unsigned attestation clause is not prima facie evidence of proper execution.[8]

¶21 Absent a signed attestation clause, execution may also be proved if witnesses testify they signed the document in the presence of the testator and testify to facts showing attestation as a matter of law. *In re Estate of Chambers*, 187 Wash. 417, 427-28, 60 P.2d 41 (1936); *In re Estate of Lindsay*, 91 Wn. App. 944, 949, 957 P.2d 818 (1998). The definition of witness as used in RCW 11.12.020 is "one who has personal knowledge of the fact that the will was signed by the testator." *In re Estate of Price*, 73 Wn. App. 745, 751, 871 P.2d 1079 (1994). Here, Reiter submitted an affidavit stating that Margaret signed the will in his presence and he signed the will as a witness. This satisfies the RCW 11.12.020 requirement as to one witness. However, Myrna must prove two attesting witnesses signed the document. Therefore, we must determine whether Taylor signed the document and, if so, if she did so as an attesting witness.

¶22 A witness may testify only to events within his or her personal knowledge, and affidavits submitted during summary judgment proceedings must be based on the affiant's personal knowledge. Rules of Evidence (ER) 602; CR 56(e); *Visser v. Packer Eng'g Assocs.*, 924 F.2d 655, 659 (7th Cir. 1991) (interpreting Federal Rule of Evidence 602, which is the same as ER 602, and stating that testimony outside an affiant's personal knowledge is not admissible in an affidavit submitted during summary judgment proceed-

---

[8] The dissent argues there is enough evidence that the attestation clause was signed to prove execution. Dissent at 181. However, whether or not the will and clause were signed by two attesting witnesses is the very issue in dispute. Since we conclude that there are genuine issues of material fact as to whether the clause and/or will were signed, it is inappropriate to rely on the attestation clause as proof of execution.

ings). A witness who personally observes an event can state an opinion, conclusion, or impression as to the event and may testify " 'about the state of mind of another, so long as the witness personally witnessed events or heard statements that are relevant to prove the other person's state of mind.' " *State v. Contreras*, 57 Wn. App. 471, 477, 788 P.2d 1114 (1990) (quoting 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 218(2), at 153 (3d ed. 1989)).

¶23 Here, Reiter stated that Margaret signed the will in Taylor's presence and he observed Taylor signing the document as a witness. However, his recall of Taylor as the notary who was present was based on a review of the notarized power of attorney containing Taylor's signature. Further, in Reiter's declaration, submitted to the court to oppose summary judgment, he states that Margaret signed the will in the presence of witnesses and a notary, implying that Taylor was not a witness. Clerk's Papers (CP) at 112; *see also* CP at 1 (petition to probate the lost will stating the will was executed in the presence of two witnesses and a notary public); *but see* CP at 2, 31 (noting that Taylor was a witness). Moreover, from Taylor's affidavits, it appears she was present for the notarization of Margaret's power of attorney, but it is not clear that she had personal knowledge that Margaret signed the will, as she does not recall any of the events associated with the execution of the will. Although Blauert stated he noticed the will was signed by two attesting witnesses, he did not state the names of the witnesses. Therefore, it is unclear if Taylor's signature is the other witness signature on the will.

¶24 Additionally, even if Taylor signed the document, it is unclear if she signed it as a notary or as an attesting witness.[9] A notary's signature may be "deemed

---

[9] Although the dissent believes assuming three people were present during execution of the will is ludicrous, at least three people visited Margaret on August 14, 1993: Reiter, Taylor, and Myrna. CP at 30-31, 119, 124; Dissent at 183-84. Therefore, it is probable that at least three people were present during execution of the will and if Taylor was present, she served as a notary and not as a witness. Further, the dissent assumes that Myrna may be the other witness. Dissent at 184

the signature of an attesting witness" where all other requirements of a valid attestation are met. *Price*, 73 Wn. App. at 752-53.[10] In *Price*, a notary's signature met the legal requirements of attestation where the notary interacted with the testator and could judge his competency, the notary declared the testator signed the will in her presence, the testator requested she sign the will, and she was qualified to be a witness. *Id*. at 753; *see also Alfaro*, 301 Ill. App. 3d at 510 (stating that the main issue is whether the notary is attesting to the genuineness of the signature or if she is attesting to all acts necessary to properly execute a will). Here, based on Taylor's affidavits, she did not interact with Margaret, she did not declare that Margaret signed the will in her presence, and she did not state that Margaret requested her to sign the will. Although Reiter states that the will was signed in the presence of himself and Taylor, there is no other evidence that Taylor had personal knowledge pertaining to whether Margaret signed the will. Further, as discussed above, the record contains contradictory evidence as to whether two witnesses and a notary were present, indicating Taylor was not a witness. CP at 1, 2, 31, 112. Therefore, even if Taylor signed the will, her signature may be only that of a notary and not as an attesting witness.

¶25 On summary judgment, inferences are construed in the light most favorable to the nonmoving party. *Balise*, 62 Wn.2d at 199. Here, there is evidence which creates a genuine issue of material fact as to the proper execution of

---

n.20. However, Rieter's, Blauert's, and Taylor's affidavits do not provide clear, cogent, and convincing evidence of this. In short, the identity of the second witness, whether it be Myrna, Taylor, or an unknown person, has not been proved by clear, cogent, and convincing evidence. Therefore, execution has not been proved.

[10] However, a notary's signature can serve only one function, so if a notarial certificate is necessary on the document, the signature cannot also serve as a witness signature. *Price*, 73 Wn. App. at 753 n.4. Here it is unclear if a notary's signature would be necessary since the document contains a certificate of subscribing witnesses that seems to conform to RCW 9A.72.085. However, even if a notary's signature was unnecessary, Taylor's signature may not be that of a witness if she lacked personal knowledge regarding Margaret's signature. *See id.* at 751.

the will and more than one conclusion could be drawn from the evidence.[11] Therefore, summary judgment is not appropriate.[12]

## C. Res Judicata

¶26 Although we have held that summary judgment is not appropriate in light of genuine issues of material fact regarding the execution of the will, we address the Court of Appeals' opinion discussing res judicata to clarify how this doctrine works in regard to probate proceedings. The Court of Appeals stated that summary judgment admitting the 1993 lost will was not appropriate because it would preclude challenges to the will's validity. *Black*, 116 Wn. App. at 485-86. We grant Myrna's motion for leave to supplement the record and admit the trial court order limiting the issues at summary judgment to admission of the 1993 will (*see* Trial Court Order) in order to explain why the Court of Appeals is mistaken in this case. *See* Rules of Appellate Procedure 9.10 (allowing the court to supplement the record in order to decide the merits of an issue on review).

---

[11] Myrna and the dissent reference several lost will cases, specifically *Harris*, *Gardner*, and *Neubert*, in support of admission of the 1993 lost will. Br. of Resp't and Cross-Appellant Myrna Black at 21-27; Dissent at 182-83. These cases are distinguishable. In *Harris*, one witness testified, and the other witness was dead; therefore, the court applied a former version of RCW 11.20.040 and found the will admissible. *Harris*, 10 Wash. at 558-59. Here, neither witness is dead, so RCW 11.20.040 is inapplicable. The *Gardner* court found appropriate execution of a destroyed will where the two attesting witnesses testified as to the execution of the will, albeit differing as to the time the will was executed. 69 Wn.2d at 235-36. Here, only one attesting witness, Reiter, testified. Although Taylor and Blauert also submitted affidavits, it is arguable whether or not Taylor was an attesting witness and Blauert was not an attesting witness. Finally, in *Neubert*, the court found the testimony of the only live attesting witness, a purported conformed copy of the will, and testimony regarding how conformed copies are made to be sufficient evidence to prove execution of the will. 59 Wn.2d at 681-84, 686. Here, the court has an unsigned computer copy, and only one definite attesting witness who was present, Reiter, testified. Therefore, *Harris*, *Gardner*, and *Neubert* do not support admission of the 1993 lost will.

[12] Because we have determined that there is a genuine issue of material fact regarding execution of the 1993 will, barring summary judgment, we decline to address the second requirement necessary under RCW 11.20.070(2) regarding whether the contents of the will were proved by "clear, cogent, and convincing evidence." On the same basis, we also find it unnecessary to address other grounds the Court of Appeals relied on to support the reversal of summary judgment. *See Black*, 116 Wn. App. at 486-87.

¶27 The doctrine of res judicata prevents relitigation of the same claim where a subsequent claim involves the same subject matter, cause of action, persons and parties, and quality of persons for or against the claim made. *Seattle-First Nat'l Bank v. Kawachi*, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978). Res judicata bars "every question which was properly a part of the matter in controversy, but it does not bar litigation of claims which were not in fact adjudicated." *Id.* at 226; *DeYoung v. Cenex Ltd.*, 100 Wn. App. 885, 891-92, 1 P.3d 587 (2000) (stating that res judicata applies to matters actually litigated and those that could and should have been raised in the prior proceeding). This doctrine applies to issues decided on summary judgment. Because "[a] grant of summary judgment is a final judgment on the merits with the same preclusive effect as a full trial," *id.* at 892, an unappealed summary judgment is res judicata as to rights determined during summary judgment. *See Lowe v. Double L Props., Inc.*, 105 Wn. App. 888, 896, 20 P.3d 500 (2001) (stating that an unappealed summary judgment became res judicata as to a party's maintenance rights, which had been determined in the summary judgment proceeding).

¶28 Normally, the offer to probate a will is a non-adversary proceeding, and a hostile party waits until the will is admitted to probate to contest the will under RCW 11.24.010. *Campbell*, 47 Wn.2d at 612-13. However, a will contest is not the exclusive way to contest a will, and "[u]nder certain circumstances, a hearing upon a petition to probate a will may properly become an adversary proceeding." *Gordon v. Seattle-First Nat'l Bank*, 49 Wn.2d 728, 736, 306 P.2d 739 (1957). Where a party raises issues regarding the jurisdiction of the court or other issues that could or should be determined at the hearing upon a petition to probate, the proceeding may be adversarial. *Id.* However, if a party contests the admission of the will to probate, generally that same party may not file a later will contest. The party's only remedy is to appeal the order admitting the will. *In re Estate of Hall*, 34 Wn.2d 830, 833, 210 P.2d

406 (1949); *see also In re Estate of Godfrey*, 164 Wash. 269, 270-73, 2 P.2d 894 (1931) (finding that where an executor under an earlier will appeared to contest the admission of a later will and did not appeal the decree admitting the later will the executor subsequently could not file a separate will contest).

¶29 However, it must be remembered that res judicata bars only claims actually adjudicated which were or should have been raised in the proceeding. Here, the trial court specifically stated it would not address claims regarding competency or undue influence and limited the summary judgment trial to whether the lost will should be admitted to probate, which included whether the will was executed at all. *See* Trial Ct. Order; *see also* Judge's Oral Op. (Sept. 6, 2001) at 4, 10 (stating that although the court has suspicions about undue influence, the issue will be addressed at the will contest trial). Because the trial court order limited the issues, the grant of summary judgment admitting the 1993 will would not bar claims regarding competency or undue influence because these claims were not addressed, nor could they be addressed, in the summary judgment trial. Therefore, the Court of Appeals was incorrect in basing its denial of summary judgment on res judicata grounds, since unadjudicated issues regarding the will's validity precluded by the trial court order could be raised by the beneficiaries in a later will contest.

## D. One Proceeding

¶30 Although we base our reversal of summary judgment on different grounds, we affirm the Court of Appeals' reversal of summary judgment. We also affirm the decision to remand the case with instructions to decide all issues pertaining to the 1992 and 1993 wills in one proceeding. *Black*, 116 Wn. App. at 488.

¶31 If a party challenges a will at probate, instead of waiting to file a will contest, and the challenge is not jurisdictional, it is within the court's discretion to

decide whether to hear the issues at probate or reserve the issues. *Gordon*, 49 Wn.2d at 736. Under an abuse of discretion standard, the trial court's decision should be upheld unless it is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). When claims arise from the same " 'transactional nucleus of facts' " and the damages are "intimately related in time, origin, and motivation, because they arise out of the same interactions between the deceased and the respondents," the claims make a "convenient trial unit" and should be decided in the probate proceeding. *Hadley v. Cowan*, 60 Wn. App. 433, 442-43, 804 P.2d 1271 (1991).

¶32 Where the trial court has abused its discretion and should have heard all issues presented at probate, the court may remand the case with instructions to decide all issues regarding the will. *Gordon*, 49 Wn.2d at 737. Trying all claims in one proceeding furthers the purpose of the probate statutes "to avoid the trial of separate and distinct contests." *In re Estate of Larson*, 187 Wash. 183, 188, 60 P.2d 19 (1936) (stating that a normal (e.g., not lost) will should be admitted in an ex parte proceeding and hostile parties should wait to contest the will until after admission).

¶33 Here, the trial court recognized problems regarding the competency of Margaret, the authenticity of the lost will, and the possibility of undue influence. *See* Trial Court Order; Verbatim Report of Proceedings (Sept. 26, 2001) at 15-16. However, the court chose to reserve these issues for the will contest because the court found the issues went to the weight of the lost will and not to its admissibility. *Id.* We find that it was an abuse of the trial court's discretion not to hear all issues regarding the validity of the will at the probate proceeding. *See Gordon*, 49 Wn.2d at 736-37 (finding the trial court abused its discretion by not hearing all objections in the probate proceeding because the court's action could cause a delay to a hearing on the contest and to an appeal). We find that on

remand it is more appropriate to hear all issues regarding the validity of both wills in one proceeding because the claims are interrelated and involve the same "transactional nucleus of facts." *See Hadley*, 60 Wn. App. at 442-43 (finding the claims of undue influence, abuse of confidence, fraud, and substitution of wills should be determined in the probate challenge). On remand we trust that the court will hear claims in a sequential order, hold all parties to the appropriate burdens of proof, and determine which will is the last will and testament of Margaret Black.

## E. Attorney Fees

¶34 The Court of Appeals reversed the trial court's order awarding attorney fees to Burns and stated that the court should award fees to both parties or to neither. *Black*, 116 Wn. App. at 491. We affirm the Court of Appeals and remand the attorney fee issue to the trial court.

¶35 The controlling statute in this case is RCW 11.96A.150. This statute leaves the award of attorney fees to the discretion of the court, and we will not interfere with a trial court's fee determination unless "there are facts and circumstances clearly showing an abuse of the trial court's discretion." *In re Estate of Larson*, 103 Wn.2d 517, 521, 694 P.2d 1051 (1985); RCW 11.96A.150; *see also* RCW 11.24.050 (attorney fee statute under the will contest chapter stating that where a will is revoked, assessment of costs shall be in the court's discretion). Based on the holdings in *In re Estate of Jolly*, 3 Wn.2d 615, 101 P.2d 995 (1940), and *In re Estate of Watlack*, 88 Wn. App. 603, 945 P.2d 1154 (1997), we find that the court abused its discretion by awarding attorney fees to Burns only.

¶36 In *Watlack*, the court ordered the estate to pay the attorney fees of all parties to the will dispute because the litigation involved all beneficiaries and affected the rights of all the beneficiaries. 88 Wn. App. at 612-13 (distinguishing *In re Estate of Niehenke*, 117 Wn.2d 631, 818 P.2d 1324 (1991), a case where the dispute did not

involve all beneficiaries); *see also Niehenke*, 117 Wn.2d at 648 (noting that where all beneficiaries are not involved in litigation, an award from the estate would harm the uninvolved beneficiaries). The court in *Jolly* found an award to an executor was appropriate where the executor unsuccessfully defended a will in good faith. 3 Wn.2d at 626-27.[13] This case is analogous to *Watlack* and *Jolly*.

¶37 Here, like *Watlack*, the will dispute involves all the beneficiaries, affects the rights of all beneficiaries, and an award against the estate would not harm any uninvolved beneficiaries. The litigation benefits the estate by establishing the final wishes of Margaret and establishing which alleged beneficiaries have a right to Margaret's estate. *See Niehenke*, 117 Wn.2d at 647-48 (stating there are situations where attorney fees are properly assessed against the estate, but noting that generally the estate must be benefited if attorney fees are assessed against it). Further, although one party will be unsuccessful in the will dispute, if it is shown that the party had a duty to oppose the will and acted in good faith, under *Jolly* the party may still be entitled to attorney fees. 3 Wn.2d at 626-27. Therefore, we affirm the Court of Appeals and remand this issue to the trial court.

## CONCLUSION

¶38 We clarify that the statutory requirements as currently written in RCW 11.20.070 must be followed and that the execution and content of a will must be proved by "clear, cogent, and convincing evidence." We affirm the Court of Appeals' reversal of summary judgment on the grounds that there are genuine issues of material fact regarding the execution of the 1993 lost will. While res judicata may apply to summary judgment proceedings regarding probate, here the Court of Appeals improperly applied the doctrine in light of the trial court's order limiting the issues in the

---

[13] Although *Jolly* is treated like a will contest, the facts are very similar to our case. In *Jolly* a will was admitted to probate, a party petitioned to admit a new will, and the executor unsuccessfully defended the prior will. 3 Wn.2d at 616-20.

probate proceeding. We remand this case to be decided in one proceeding, with all issues regarding the 1992 and 1993 wills to be decided in that proceeding. Finally, we affirm the Court of Appeals reversal of attorney fees and remand all issues regarding fees to the trial court.

ALEXANDER, C.J., and JOHNSON, MADSEN, IRELAND, BRIDGE, and FAIRHURST, JJ., concur.

¶39 SANDERS, J. (dissenting) — I dissent. I would reinstate the trial court's summary judgment order admitting the 1993 will to probate. This would permit litigation of the real contentious issues, namely whether execution of the 1993 lost will was procured through undue influence and whether Margaret Black had sufficient testamentary capacity. But to refuse to admit this will to probate conflicts with prior cases which have admitted lost wills under more tenuous circumstances.

### Proving Execution of Lost Will

¶40 Before turning to the ultimate issue of whether to admit the 1993 will to probate, I note my disagreement with the majority's assertion that the "clear, cogent, and convincing" standard[14] in RCW 11.20.070(2) applies not only to proof of a lost will's provisions but also to its execution. Majority at 163. However the plain language of the statute does not support such a construction. Moreover, our cases construing RCW 11.20.070 over the years have consistently held that heightened standard of proof applies only to proof of the lost will's contents—not its execution. Coupled with the fact subsequent legislative amendments did not alter that distinction, it follows that the "clear, cogent, and convincing" standard in RCW 11.20.070(2) does not apply to proof of the lost will's execution.

---

[14] This court has previously interpreted that standard to mean "evidence [which] shows the ultimate fact at issue to be highly probable." *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

¶41 To date, no Washington court has thoroughly examined the lost wills statute since it was last amended in 1995. Thus, a review of some general statutory construction principles is in order. Any statutory analysis must begin by examining the plain language of the statute, bearing in mind that the principal aim of statutory construction is to give effect to the legislature's intent. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894, 83 P.3d 999 (2004). If the language is unambiguous, the court must give effect to that language alone and end its inquiry for the legislature is presumed to say what it means. *State v. Salavea*, 151 Wn.2d 133, 142, 86 P.3d 125 (2004).

¶42 The lost wills statute currently provides:

(1) If a will has been lost or destroyed under circumstances such that the loss or destruction does not have the effect of revoking the will, the court may take proof of the execution and validity of the will and establish it, notice to all persons interested having been first given. The proof must be reduced to writing and signed by any witnesses who have testified as to the execution and validity, and must be filed with the clerk of the court.

(2) The provisions of a lost or destroyed will must be proved by clear, cogent, and convincing evidence, consisting at least in part of a witness to either its contents or the authenticity of a copy of the will.

(3) When a lost or destroyed will is established under subsections (1) and (2) of this section, its provisions must be distinctly stated in the judgment establishing it, and the judgment must be recorded as wills are required to be recorded. A personal representative may be appointed by the court in the same manner as is herein provided with reference to original wills presented to the court for probate.

RCW 11.20.070. Notably, subsection (2) of the act requires only "[*t*]*he provisions* of a lost or destroyed will [to] be proved by clear, cogent, and convincing evidence." RCW 11.20.070(2) (emphasis added). Nowhere in that subsection is any reference to proof of the lost will's execution. Rather it is subsection (1) of RCW 11.20.070 which addresses proof

of that element as well as the will's validity (i.e., testamentary capacity, lack of undue influence). Not coincidentally, RCW 11.20.070(1) makes *no* mention of proving a lost will's provisions. Thus, there is an express legislative distinction between proving a lost will's execution and validity and proving the lost will's testamentary scheme.

¶43 However the majority blends subsections (1) and (2) together under the erroneous belief it is reading RCW 11.20.070 as a whole and giving effect to all language used. Majority at 163. It is firmly established though that courts "must not add words where the legislature has chosen not to include them." *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003). Yet this is precisely what the majority does by interjecting "execution" into RCW 11.20.070(2)—the only subsection in chapter 11.20 RCW (the applicable chapter for proving wills for probate) to even reference the "clear, cogent, and convincing" standard.[15]

¶44 Even assuming the statute is ambiguous yields the same result, as our cases construing prior versions of the statute recognized a distinction between proving a will's execution and its contents. If a statute is ambiguous, meaning it is susceptible to two or more reasonable interpretations, then the court may look beyond the plain language to other aids, such as legislative history. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242-43, 88 P.3d 375 (2004). Prior to 1995 the lost wills

---

[15] The "clear, cogent, and convincing" standard does appear in other provisions of Title 11 RCW. *See* RCW 11.40.040(2) (standard of proof to overturn presumption that personal representative exercised reasonable diligence to determine identity of decedent's creditors); RCW 11.42.040(2) (same for notice agent handling creditors against nonprobate assets); RCW 11.54.040(1) (standard of proof to obtain increased award from estate for basic maintenance and support needs); RCW 11.88.045(3) (standard of proof in guardianship proceedings to establish alleged incapacitation). The clear, cogent, and convincing standard also applies in will contest proceedings under chapter 11.24 RCW, where the party seeking to overcome the presumption of validity if the will is admitted to probate (or presumption of invalidity if the will is rejected from probate) by the aforementioned standard. *See In re Estate of Jolly*, 197 Wash. 349, 354, 85 P.2d 267 (1938). At issue here is whether Myrna Black sufficiently proved the 1993 lost will for probate, thus rendering the above referenced statutes irrelevant to the case at hand.

statute provided in relevant part:

> Whenever any will is lost or destroyed, the court may take proof of the execution and validity of such will and establish it, notice to all persons interested having been first given. Such proof shall be reduced to writing and signed by the witnesses and filed with the clerk of the court.
>
> No will shall be allowed to be proved as a lost or destroyed will unless it is proved to have been in existence at the time of the death of the testator, or is shown to have been destroyed, canceled or mutilated in whole or in part as a result of actual or constructive fraud or in the course of an attempt to change the will in whole or in part, which attempt has failed, or as the result of a mistake of fact, nor *unless its provisions are clearly and distinctly proved by at least two witnesses*, and when any such will is so established, the provisions thereof shall be distinctly stated in the judgment establishing it, and such judgment shall be recorded as wills are required to be recorded. . . .

Former RCW 11.20.070 (Laws of 1965, ch. 145, § 11.20.070) (emphasis added). This court recognized "the clear and distinct proof referred to in the lost wills statute, RCW 11.20.070, relates *only to the provisions of the instrument, and not to its execution.* Proof as to the execution of the instrument is dealt with in the *first paragraph of that statute and in other statutes." In re Estate of Peters*, 43 Wn.2d 846, 860, 264 P.2d 1109 (1953) (emphasis added) (citing RCW 11.20.020, .040); *see also In re Estate of Gardner*, 69 Wn.2d 229, 235-36, 417 P.2d 948 (1966). The "other statutes" referenced in *Estate of Peters* describe the standard procedure for admitting any *existing* will to probate and how such proof may be obtained if one or more of the subscribing witnesses is deceased or unavailable. *See* RCW 11.20.020, .040. Thus, proof of a lost will's execution under former RCW 11.20.070 was *no different* than proving any other will's execution.

¶45 When the legislature amended RCW 11.20.070 in 1994[16] by enacting Substitute House Bill 2270, Laws of 1994, ch. 221, § 20, it left much of the first paragraph intact as a newly created subsection (1). *Cf.* RCW 11.20.070(1). Along with removing the requirement to prove the lost will's existence at the time of the testator's death, the amendment further replaced the "clearly and distinctly" standard with the "clear, cogent, and convincing" one, which now comprises subsection (2). RCW 11.20.070(2). Thus, as was the case in *Estate of Peters*, the statute still requires the same standard of proof for execution of the lost will as it does for existing wills. To conclude as the majority does requires one to assume the legislature overruled *Estate of Peters* sub silentio. *Estate of Peters*, 43 Wn.2d at 860. Yet the legislature's refusal to modify the relevant language[17] from the first paragraph of former RCW 11.20.070 rebuts this assumption.

¶46 *In re Last Will & Testament of Borrow*, 123 Wash. 128, 212 P. 149 (1923) is not to the contrary. Language in that opinion expressed "the least that can be required [when a lost will is offered for probate] is that the evidence to establish its *execution* and contents must be clear and convincing." *Id.* at 130 (emphasis added). Yet that court rejected probate of the lost will because the "appellant failed to establish that any will had ever, at any time, been

---

[16] The relevant section of Substitute House Bill 2270 took effect on January 1, 1995. LAWS OF 1994, ch. 221, § 75(1).

[17] One legislative change in that section is worth some mention. Whereas former RCW 11.20.070 required the proof to be in writing and "signed by *the* witnesses," (emphasis added), the revised version required the proof to be in writing and "signed by *any* witnesses *who have testified as to the execution and validity*," RCW 11.20.070(1) (emphasis added). Courts presume a change in legislative intent whenever it materially alters a statute and that the legislature intended to exclude the term so omitted. *Rhoad v. McLean Trucking Co.*, 102 Wn.2d 422, 426-27, 686 P.2d 483 (1984). The amendment of "the witnesses" to "any witnesses" suggests the legislature sought to clarify the requirement in lost wills cases that every witness must provide signed proof of a lost will's execution. *Accord* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (1981) (defining "any" as "used as a function word to indicate the maximum or whole of a number or quantity," such as "give me [any] letters you can find"). Regardless, it cannot be reasonably argued that the "clear, cogent, and convincing" standard leaped from one subsection to the next merely by modifying "the" to "any."

made by the deceased." *Id.* at 129. Our majority's excessive reliance on *Borrow*'s language referencing "execution" has already been conclusively rejected. In *Estate of Gardner* the court looked to both the quoted portion from *Borrow* on which our majority so heavily relies and the above-referenced quote from *Estate of Peters.* 69 Wn.2d at 235. *Estate of Gardner* found *Estate of Peters* more persuasive on the point and permitted the lost will to be probated. *Id.*

¶47 Since the presumptive burden of proof for civil cases is by a preponderance of the evidence, *Reese v. Stroh*, 128 Wn.2d 300, 312, 907 P.2d 282 (1995), and proving execution of a lost will for probate is the same as proving execution of any other will, it follows that standard of proof applies when a lost will is offered for probate until the legislature mandates otherwise. Whereas the will's contents must be proved by "clear, cogent, and convincing evidence," RCW 11.20.070(2), execution is proved by a preponderance of the evidence. It may or may not be better policy to require the heightened standard to prove a lost will's execution; that debate, however, belongs in the legislature—not this court. *State ex rel. Johnson v. Lally*, 59 Wn.2d 849, 855, 370 P.2d 971 (1962).

*Admitting Lost Will to Probate and Summary Judgment*

¶48 Even though the preponderance of the evidence standard applies to proving the lost will's execution, it is not per se determinative of the ultimate issue, namely whether to admit the 1993 lost will. However when this record is viewed *as a whole*, reasonable minds could reach but one conclusion: Margaret Black signed this written will on August 14, 1993, and Robert Reiter and Janet Taylor signed their names as witnesses. My reasons follow.

¶49 The statutory requisites to formally execute a will are minimal. *Estate of Gardner*, 69 Wn.2d at 236; *In re Estate of Chambers*, 187 Wash. 417, 425, 60 P.2d 41 (1936). A will is validly executed if it is (1) in writing, (2) signed by the testator, and (3) "attested by two or more competent

witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence of the testator and at the testator's direction or request." RCW 11.12.020(1). Myrna, as petitioner to admit the will, must prove all three of these elements. RCW 11.20.070(1). In addition, because Myrna seeks to admit a will that has been lost, she must also prove that will's substantive provisions. RCW 11.20.070(2). Proof of the will's provisions (*not* execution) must be by "clear, cogent, and convincing evidence." *Id*. The only debatable issue here is whether the will was attested to by two or more persons who subscribed their names to the will in Margaret's presence and at Margaret's direction or request. RCW 11.12.020(1).[18]

¶50  This case ultimately turns on whether the affidavits of Seattle attorney Paul Blauert, California attorney Robert Reiter, and notary Janet Taylor sufficiently remove any genuine issue of material fact as to whether two persons witnessed Margaret execute this will and subscribed their names to the will attesting to this fact.

¶51  A signed attestation clause is prima facie proof that the will was signed by two witnesses in the testatrix's presence and at her request or direction. *In re Estate of Campbell*, 47 Wn.2d 610, 615-16, 288 P.2d 852 (1955). While the majority correctly notes the proffered copy of the lost will is unsigned, uncontradicted testimony from Blauert and Reiter demonstrate that two persons signed that clause: Reiter and Taylor.

¶52  A copy of the lost will was provided as an attachment to both Blauert's and Reiter's affidavits respectively. Blauert affirmed that the copy attached to his affidavit is

---

[18] This is properly so since the lost will was in writing and signed by Margaret as evidenced by both Paul Blauert's and Robert Reiter's unchallenged affidavits, which together demonstrate Blauert drafted a written will which Margaret signed. Moreover the contents of the will unquestionably leave Margaret's entire estate to Myrna. While one need only prove the substance of the lost will's provisions and not the exact language to satisfy RCW 11.20.070(2), *Estate of Gardner*, 69 Wn.2d at 236, the affidavits of Blauert and Reiter demonstrate the copy of the lost will Blauert drafted and the copy Reiter witnessed are identical. This more than adequately satisfies the requisite proof of the will's provisions.

identical to the actual will he drafted and kept on file. That copy is the same in all respects as the copy attached to Reiter's affidavit, which Reiter affirms is identical to the will actually executed by Margaret. That will contained an attestation clause.

¶53 Reiter also testified by declaration that he "asked Mrs. Black a number of questions [about the will] in Ms. Taylor's presence." Clerk's Papers (CP) at 31. Margaret told Reiter that she understood she was signing a will and that the will "left her entire estate to Myrna." CP at 31. He further testified that in Margaret's presence he "and Ms. Taylor signed [their] names *as witnesses thereto.*" CP at 31 (emphasis added). Finally Reiter affirmed he and Myrna gave that signed document to Blauert at Seattle-Tacoma International Airport the following day. CP at 32.

¶54 Blauert testified that he drafted the will and that it was the same document Myrna returned to him when she returned to Seattle from Walla Walla. CP at 43-44. This corroborates Reiter's testimony. Blauert further testified that the will "had been executed on August 14, 1993, and that it had been attested to and signed by two witnesses." CP at 44.

¶55 The majority is correct Blauert's testimony alone insufficiently demonstrates Taylor and Reiter signed as witnesses, as Blauert was not present when the will was signed. Majority at 167. But when viewed in conjunction with Reiter's testimony and the identity between the copies of the will attached to Blauert's and Reiter's affidavits, the only reasonable conclusion to draw is that Reiter and Taylor signed the attestation clause of the will.

¶56 The majority emphasizes, however, that Taylor cannot independently recall Margaret Black executed the will. Majority at 167-68. Such is not dispositive. *See In re Estate of Neubert*, 59 Wn.2d 678, 369 P.2d 838 (1962). In *Estate of Neubert* the only living attesting witness, an attorney in the law firm which possessed a conformed copy of the lost will, "had no independent memory of Mrs. Neubert [the testatrix] or the execution of the [lost] will in his and [the

other witness's] presence." *Id.* at 682. In fact, not one person who testified at the probate hearing could independently recall execution of the will. The sole testimony came from another attorney in the law firm, the attorney witness who could not recall the specific execution, and a secretary, all of whom testified to the procedure for conforming copies of wills. *See id.* at 680-84. Though *not one* attesting witness testified to the actual execution of the lost will, we held the execution had been sufficiently proved. *Id.* at 685.[19] Likewise, *Estate of Gardner* held probate of a lost will was required where one subscribing witness specifically recalled execution of *the* will at issue and the subscribing witness could only recall that *a* will was executed, though she could not accurately recall the date of execution. *Estate of Gardner*, 69 Wn.2d at 236-37.

¶57 Thus we have not once, but twice held execution of a lost will was sufficiently proved by fewer than two witnesses affirmatively testifying to the execution of the will. Yet the majority discounts these authorities claiming "only one attesting witness testified." Majority at 169 n.11. This simply is not true. To the contrary there are affidavits filed under oath by not only Reiter but also Taylor and Blauert. Merely because Taylor lacks independent recollection of this will's execution does not render her testimony useless and irrelevant. Rather, Taylor affirms she met Margaret Black in 1993. In her second declaration Taylor acknowledges she "believe[s] that [she] did personally observe Margaret Black sign the Durable Power of Attorney on August 14, 1993, because [she] *did not notarize documents for individuals* [she] did not know, without them being in [her] presence at the time of signing." CP at 119-20. Moreover the majority's attempted distinction based on "one" witness's testimony is tenuous given *Estate of Neubert* held execution was proved despite no affirmative testimony to the execution of the will.

---

[19] *Estate of Neubert* denied probate of the lost will, however, because the proponents there failed to meet the then existing statutory requirement of proving the lost will was in existence at the time of the testator's death. *Estate of Neubert*, 59 Wn.2d at 687. That requirement was removed in 1995. LAWS OF 1994, ch. 221, § 20 (codified at RCW 11.20.070(2)).

¶58 The majority further notes Taylor may have served only as a notary and not as a witness. Majority at 167-68. For support the majority relies on both the petition to admit the will and one of Reiter's declarations that suggests there were two witnesses and a notary in the room where Margaret executed the will. *Id.* at 167-68. To conclude, as the majority does, one must assume not two but three persons stood next to Margaret when she executed the will. *Nothing* in the record other than semantics suggests this, and the authority on which the majority relies specifies the opposite.[20]

¶59 Reiter's initial declaration asserts he "and Ms. Taylor signed [their] names *as witnesses thereto.*" CP at 31 (emphasis added). Furthermore, the second page of the petition to admit the will, which the majority fails to mention, alleges "Mr. Reiter has executed an Affidavit filed herein testifying as to the provisions and execution of the Will by the decedent and decedent's testamentary capacity and to the witnessing of the Will by both himself and *the other witness, Janet Taylor, who also notarized the executed Will.*" CP at 2 (emphasis added). Thus, when viewing the petition *as a whole*, Myrna alleged that Taylor was both a

---

[20] The majority offers the possibility Myrna was the third individual in the room, and as such Taylor still could have been merely a notary and nothing more. *See* majority at 167. Even assuming this to be true, the 1993 will must be admitted to probate. Execution of a will is still valid even if one of the attesting witnesses is interested (i.e., a beneficiary under the will). RCW 11.12.160(2); *Estate of Chambers*, 187 Wash. at 420 (holding beneficiaries under a will are qualified to testify to execution). Rather the interested witness would lose his or her gift under the will (absent proof overcoming a presumption of undue influence) and that property would pass intestate. RCW 11.12.160(3). Granted, such a situation would have the same net effect here with Myrna being the only beneficiary under the 1993 will and sole intestate heir to Margaret's estate. Yet that does not invalidate execution of the 1993 will, which would, as a matter of law, revoke the 1992 will. *In re Estate of Campbell*, 46 Wn.2d 292, 296, 280 P.2d 686 (1955). Nonetheless, those beneficiaries would still be afforded the opportunity to revive the 1992 will through the doctrine of dependent relative revocation. *See generally In re Kerckhof's Estate*, 13 Wn.2d 469, 472-73, 125 P.2d 284 (1942). Thus, even *if* Myrna was the other witness, execution of the will was sufficiently proved. But that possibility should not be considered in any event, as to conclude as much necessitates a finding that Reiter is not credible, which is wholly unacceptable in summary judgment proceedings absent evidence rebutting his assertions. *See Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991).

notary *and* a witness. Surrounding circumstances can render a notary's signature into that of a subscribing witness so long as it meets the formal requirements of attestation. *In re Estate of Price*, 73 Wn. App. 745, 752-53, 871 P.2d 1079 (1994) (citing *Estate of Chambers*, 187 Wash. at 423). The majority distinguishes *Estate of Price* claiming Taylor did not interact with Margaret nor affirmatively declare that Margaret signed the will in her presence. Yet nowhere in Taylor's written testimony is there any denial such interaction took place. Moreover Blauert's and Reiter's affidavits establish Taylor signed the attestation clause along with Reiter.

¶60 All three affidavits when viewed in conjunction with one another establish Myrna met her prima facie summary judgment burden. Given that the beneficiaries of the 1992 will failed to produce any evidence outside their pleadings that demonstrated a genuine issue of fact remains,[21] summary judgment must be awarded. CR 56(c). Basically the majority does not find Reiter and Blauert credible, despite the fact both individuals were deposed by the beneficiaries of the 1992 will, and the beneficiaries ultimately unearthed no evidence to discredit them. However judging a witness's credibility when the opposing party does not bring forth any countering evidence is inappropriate. *Howell v. Spokane & Inland Empire Blood Bank*, 117 Wn.2d 619, 626, 818 P.2d 1056 (1991).

## CONCLUSION

¶61 Genuine issues of fact may remain as to whether Margaret Black executed the 1993 lost will under undue influence or without sufficient testamentary capacity. Yet

---

[21] The only evidence proffered by the beneficiaries of the 1992 will was a declaration filed by Reiter in previous guardianship proceedings instituted in 1993, in which Reiter makes no mention of Margaret's executing the 1993 lost will. CP at 82-85. However the declaration corroborates Myrna's and Reiter's trip to visit Margaret in every other respect, and the beneficiaries do not describe what relevance testimony regarding execution of the will would have had to those guardianship proceedings, nor why such testimony would be included in those proceedings in the first place.

those issues must be decided in a subsequent will contest. They are therefore immaterial to the issue to which summary judgment was sought. *See Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (material fact is one which affects the outcome of the litigation). Myrna satisfied the statutory requirements to admit the lost will to probate. I therefore would admit the will to probate, and dissent.

CHAMBERS, J., concurs with SANDERS, J.