[No. 36099.    Department Two.    March 22, 1962.]

*In the Matter of the Estate of* ANNE G. NEUBERT, *Deceased.**

* Reported in 369 P. (2d) 838.

*John J. Kennett* and *Thomas J. Greenan,* for appellants.

*Jordan & Adair,* for respondent.

DONWORTH, J.—This is an appeal from an order denying the admission of a purported lost will to probate.

Anne G. Neubert, sometimes known as Ane Christen Neubert, died at Seattle on September 29, 1960. She will be referred to herein either as Mrs. Neubert or as the decedent.

On October 19, 1960, John J. Kennett, one of the appellants, qualified as special administrator of her estate pursuant to an order of appointment based on a petition filed the preceding day.

On that day, Mr. Kennett filed a petition (in which all of decedent's heirs at law joined) to be appointed the personal representative of her estate.

At the same time, Mr. Kennett filed a petition for the probate of a lost will allegedly executed by the decedent on July 12, 1950 (herein referred to as the 1950 will).

Also, on the same date, the original of a prior will purportedly executed by the decedent on February 8, 1946, was filed in this proceeding. This document will be referred to as the 1946 will.

The material difference between the disposition of the decedent's property in the two wills is:

By the 1946 will, the residue of the estate is divided equally between her brother, appellant Holger Christensen (then residing in Wenatchee) and respondent, Adolph Wittmack (then residing in Kiel, Germany), who was a nephew of Mrs. Neubert's husband, who had died in 1945.

By the 1950 will, all of the residue goes to appellant Holger Christensen (decedent's brother). In this will, the decedent revoked all former wills.

(In each will the decedent appointed S. E. Snyder as executor with nonintervention powers, but he has declined the appointment.)

At the several hearings on appellants' petition, the testimony related not only to the execution of the 1950 will and its existence subsequent to the testator's death, but also to the relations between the decedent and her brother and her nephew by marriage, respectively, during the last thirty-five years of her life.

At the conclusion of the evidence and after hearing the arguments of counsel, the trial court held that appellants had failed to prove the proper execution of the 1950 will by the decedent and denied the petition for its admission to probate on that ground only. From the trial court's order dismissing their petition, appellants have appealed.

Concerning their nine assignments of error, appellants, in their brief, list the following six issues:

"1. The execution of the lost will.
"2. The provisions of the lost will.
"3. The revocation or destruction of the lost will by decedent or by anybody during her lifetime with her knowledge or consent.
"4. The revocation of the 1946 will by the due and proper execution of the lost will on July 12, 1950.
"5. Abuse of discretion by the court re:
    (a) Failure to admit evidence;
    (b) Failure to decide all issues presented.
"6. The doctrine of *res judicata.*"

Regarding the execution of the 1950 will, the trial court held that the testimony was insufficient to establish this vital fact. Its reason for so holding was not based upon any doubt as to credibility of the three principal witnesses, but solely on the ground that their testimony concerned only the usual or customary practice of the law firm, in whose office the will was purportedly executed, regarding the typing and the mechanics of retention of conformed copies after execution.

In other words, the trial court accepted the testimony of the witnesses but felt that it did not sufficiently show that the customary office procedure was specifically followed in regard to Mrs. Neubert's 1950 will.

It is, therefore, necessary to consider the testimony of

the three witnesses in some detail in order to pass upon the correctness of the trial court's order.

A purported conformed copy of the 1950 will was found in the will file in the law office of Weter, Roberts & Shefelman in Seattle. According to this copy, the attesting witnesses were James P. Weter and Victor D. Lawrence. Mr. Weter died prior to the death of Mrs. Neubert.

Mr. Shefelman testified that he had practiced law as a partner in the firm for more than thirty years, and that Mr. Lawrence was associated with the firm as an attorney in July, 1950. Mr. Shefelman's testimony as to the usual and customary procedure followed by the firm in regard to making copies of wills that were conformed to the original was as follows:

"A. The will would of course be prepared by a stenographer and there would be a space at the bottom of each page if there was more than one page for the signature of the testator or the testatrix, and of course on the last page there would be a space for the signature of the two witnesses to the will. No blanks would of course be filled in in the original will; that is the names of neither testator or testatrix, or witnesses would be inserted. In typing the will the stenographer would insert a yellow second sheet above the signature, above the place where the testator or testatrix was to sign each page of the will and would type the name of the testator or testatrix, the maker of the will, where he or she was expected to sign, so that on the carbon copy of the will which we retained in our file the signature of the maker of the will would appear as a true carbon copy signature. Q. You said the 'signature.' The 'name?' A. The name. That is the name. Q. So, your copy then, as far as the testator or testatrix, would be a carbon copy made that way by having a yellow sheet between the ribbon and the original; so the original—nothing would appear there, that would be left for the person to sign? A. That is correct. Q. I think I understand that now. A. (continuing) The names of the witnesses would be typed directly onto the copies after the will had been signed by the maker of the will, so that that typing would be an original typing in each instance."

Mr. Shefelman then identified a purported copy of the 1950 will which was found in the office file where it was

customary to keep copies of the latest will executed by a client.

After the instrument was admitted in evidence (as Ex. 1), the witness further testified that the name of the testatrix was typed in carbon whereas the names of the two attesting witnesses were in original typewriting. He further stated that this would not be the case if prior to typing their names the original had not been fully and properly executed, although he had no personal knowledge of this particular transaction.

Mr. Lawrence, whose name was typed on the copy as an attesting witness, testified that he had been associated with the law firm mentioned above for about thirteen years prior to July, 1950. He occupied the next office but one to Mr. Weter's office. During that period, he was quite often requested by Mr. Weter to witness the execution of wills by clients. His description of the office practice of the law firm in regard to typing wills and conforming copies thereof was substantially the same as Mr. Shefelman's. He also testified that his name and Mr. Weter's were typed on Exhibit 1 directly from the ribbon (*i.e.* not a carbon). The name of the testatrix was typed from a carbon. Under the office practice, the names of the attesting witnesses would not have been typed prior to the execution of the will by the testatrix and the signing by the witnesses. Mr. Lawrence had no independent memory of Mrs. Neubert or the execution of the 1950 will in his and Mr. Weter's presence.

At the close of all the testimony (including testimony of other witnesses relating to Mrs. Neubert's relations with her brother and her nephew by marriage), the trial court orally expressed the opinion that appellants had not met the burden of proof required by our statute relating to lost wills (RCW 11.20.070). It stated that the testimony of Mr. Shefelman and Mr. Lawrence showed only that it was probable that the 1950 will was executed by Mrs. Neubert, and it was necessary to show that it actually was executed.

At the request of appellants' counsel, a further hearing was held about three weeks later at which a transcription

of the testimony of the two witnesses previously referred to was submitted to the court and duly certified.

At this hearing, appellants' petition to reopen the case for the purpose of taking further testimony (supported by affidavits) was submitted to the court and, after argument, granted.

A third hearing was held about five weeks after the second, at which appellants produced Mrs. Beulah Nelson, who was Mr. Weter's secretary in July, 1950. She testified regarding conforming copies of wills as follows:

"Q. Will you tell us what the practice was that you followed with respect to conforming wills drawn by Mr. Weter after they had been executed by the maker of the will and witnessed by the witnesses? . . . A. After they had been completely signed, I would sit down to my typewriter and fill in the names of the testator or testatrix, and the witnesses. Q. In what manner would you fill in on a copy the name of the maker of the will? A. Occasionally they would be carboned in, but the witnesses names I couldn't possibly do that, because I wouldn't know who it would be until they were signed. Q. I see. You mean when the will was originally typed you would put a piece of paper in so the carbon of the maker's signature would come out— A. Yes. Q. The blanks for the witnesses would have nothing on them? A. No. MR. KENNETT: Read the question again. I am afraid her answer may be construed as being the opposite of what she meant. (The reporter read back the last preceding question and answer). A. I drew a line with the typewriter and it was left entirely blank until after the witnesses signed. . . . Q. Mrs. Nelson, after you had conformed a carbon copy of the will so that it would be an exact copy of the original, what did you do with the original of the will? A. Returned it to Mr. Weter. Q. And what did you do with the copy you had conformed? A. It was put in my filing basket for filing. Q. Where was it filed? A. In the will file."

The witness recalled having met Mrs. Neubert once or twice when she came to the office to consult Mr. Weter. She described Mrs. Neubert and the way she was dressed at that time. After examining the copy of the 1950 will, Mrs. Nelson further testified:

"Q. (By Mr. Kennett) Did you prepare the original of

that? A. Yes. Q. For the record, what are the names of the witnesses on there? A. James P. Weter and Victor D. Lawrence. Q. Do they appear typed on there? A. Yes. Q. Is that ribbon typing or carbon impression of ribbon typing? A. No, it's directly from the typewriter. Q. Now looking at the date of the will, you say it is the 12th of July, 1950, is that right? A. Yes. Q. Does the figure '12th', does that appear there in direct ribbon typing or is that a carbon impression of ribbon typing? A. No, it's carboned in. I mean it's carbon with the rest of the will. Q. You have told us that you saw Mrs. Neubert in the office once or twice? A. Yes. Q. Do you know what the occasion of her coming to the office was? A. For a will. Q. And did you conform a carbon copy of the will prepared by you, to make it an exact duplicate of the original after execution of the original? A. Yes. Q. And is it your testimony that Exhibit 1 is the copy that you conformed? A. Yes. Q. Now one other question with respect to Exhibit 1. Having told us your practice, what does the fact that the figure '12th' is in carbon mean to you? A. That means that the client was waiting there in the office to sign the will, otherwise I would have drawn a blank line. Q. Because you wouldn't have known, if she wasn't there, what day she was going to execute it, and you would leave a blank line, is that correct? A. Yes. Q. Would you tell the Court, what you know only, of course, of the frequency with which Mr. Victor D. Lawrence appeared as an attesting witness on wills prepared by Mr. Weter for his clients during the period of time you were in the office? . . . A. At that time it was a common practice for Victor D. Lawrence and James P. Weter to be witnesses on wills."

At this third hearing, Mrs. Parcel, a legal secretary formerly employed by Mr. Kennett, testified that she became acquainted with Mrs. Neubert during the spring or early summer of 1950, when she came to Mr. Kennett's office. Mrs. Parcel said that she had seen Mrs. Neubert there about twenty or thirty times. The witness described Mrs. Neubert in some detail. This description was similar to that given by Mrs. Nelson in her testimony.

The first question presented by the assignments of error is whether the evidence referred to above was sufficient to prove the due and proper execution by Mrs. Neubert of the

original 1950 will, of which Exhibit 1 is allegedly a conformed copy.

The trial court, in findings 3 and 4 found that it was not sufficient, and by its decree denied its admission to probate.

■ The determination of this issue is important (independently of the question of whether the evidence was sufficient to comply with the provisions of the last paragraph of the lost will statute (RCW 11.20.070)), because, if the execution of the 1950 will is established, the revocation clause would become operative. The result would be that the 1946 will would be revoked and Mrs. Neubert would have died intestate.

The first paragraph of the statute referred to provides:

"Whenever any will is lost or destroyed, the superior court may take proof of the execution and validity of such will and establish it, notice to all persons interested having been first given. Such proof shall be reduced to writing and signed by the witnesses and filed with the clerk of court."

Appellants rely on *In re Peters' Estate*, 43 Wn. (2d) 846, 264 P. (2d) 1109, in which we said:

"In our opinion, the clear and distinct proof referred to in the lost wills statute (RCW 11.20.070) relates only to the provisions of the instrument, and not to its execution. Proof as to the execution of the instrument is dealt with in the first paragraph of that statute and in other statutes. RCW 11.20.020, Rem. Rev. Stat., § 1380; RCW 11.20.040. [*cf*. Rem. Supp. 1945, § 1382]. . . ."

The testimony of the three principal witnesses (which is quoted or described above) is sufficient, in our opinion, to establish the execution of the 1950 will under RCW 11.12-.020. The trial court was satisfied with the veracity of the witnesses (quality of proof) but not with the sufficiency of their testimony (quantity of proof). In the latter respect, we feel that the court was in error. In RCW 11.12.080, it is provided:

"If, after making any will, the testator shall duly make and execute a second will, the destruction, cancellation, or revocation of such second will shall not revive the first will unless it appears by the terms of such revocation that it was

his intention to revive and give effect to the first will, or unless he shall duly republish his first will."

The premise which necessarily underlies this section is that a revocation is effective when executed, and that a later revocation of the revoking instrument does not, in itself, affect the earlier revocation. *A fortiori*, the mere fact that the evidence in support of a lost or destroyed will is quantitatively insufficient to allow it operative effect in probate, does not prevent such will from having the effect of revoking prior wills. ". . . [W]hen a will has been properly executed but has no operative force . . . it will nevertheless revoke a former will." *In re Peirce's Estate*, 63 Wash. 437, 441, 115 Pac. 835 (1911). Proof of the revocatory effect of a will on prior wills is governed by the same requirements as proof of its execution. (Those requirements are set forth in the excerpt from *In re Peters' Estate, supra*. See, also, *In re Harris' Estate*, 10 Wash. 555, 39 Pac. 148 (1895)). Therefore, the requirements found in the second paragraph of RCW 11.20.070, which must be met in order to prove the provisions of a lost or destroyed will (to give it operative effect in probate) are not applicable in determining whether such will revoked an earlier will.

Since we have held that appellants' evidence was legally sufficient to establish that the will of July 12, 1950, was duly executed by Mrs. Neubert, it follows that the evidence was also sufficient to establish that the will of February 8, 1946, was thereby revoked.

Appellants' next contention is that they have conclusively proved the provisions of the lost 1950 will, so that those provisions must be given effect in probate. This contention is governed by the second paragraph of RCW 11.20.070, which states:

"No will shall be allowed to be proved as a lost or destroyed will unless it is proved to have been in existence at the time of the death of the testator, or is shown to have been destroyed, canceled or mutilated in whole or in part as a result of actual or constructive fraud or in the course of an attempt to change the will in whole or in part, which

attempt has failed, or as the result of a mistake of fact, nor unless its provisions are clearly and distinctly proved by at least two witnesses, and when any such will is so established, the provisions thereof shall be distinctly stated in the judgment establishing it, and such judgment shall be recorded as wills are required to be recorded. Executors of such will or administrators with the will annexed may be appointed by the court in the same manner as is herein provided with reference to original wills presented to the court for probate."

■ Before such will can be probated, it must be shown that the will was in existence at the time of death, or that its nonexistence was a result of fraud or mistake. Appellants have failed to surmount this barrier. The only evidence offered by appellants in this regard merely tended to show that respondent had had an opportunity to destroy the will and was the type of person who might do such a thing. Such evidence is simply an invitation to conjecture and is, in our opinion, insufficient to comply with the above quoted statutory provisions relating to proof of lost or destroyed wills.

Appellants invite our attention to two of our prior decisions—*In re Auritt's Estate,* 175 Wash. 303, 27 P. (2d) 713 (1933), and *In re Peters' Estate,* 43 Wn. (2d) 846, 264 P. (2d) 1109 (1953)—as being in point. Neither case is applicable. In the former case there was sufficient circumstantial evidence to support a finding that the will was in existence at the time of death. The latter case did not deal with the statutory requirement with which we are concerned, but, rather, it involved the question of whether or not the provisions of the will were "clearly and distinctly proved by at least two witnesses." These two cases have no bearing on the question before us, and we must conclude that the trial court was correct in refusing to allow the provisions of the 1950 will to be given effect as a lost or destroyed will.

The execution of the 1950 will had the effect of revoking all prior wills, but its provisions for the distribution of Mrs. Neubert's estate cannot be given effect, because the

applicable statutory requirements have not been met. Therefore, Mrs. Neubert died intestate.

The judgment and decree appealed from, denying the petition for the probate of the alleged lost or destroyed will of Anne G. Neubert executed July 12, 1950, and dismissing the petition with prejudice, is reversed in part and affirmed in part and remanded to the trial court for further proceedings as follows:

The portion thereof dismissing the petition with prejudice is reversed and a new judgment and decree (based on appropriate findings and conclusions) shall be entered declaring that the aforesaid will of July 12, 1950, was duly executed by the decedent on that date and that the purported will of February 8, 1946, was thereby revoked; that, petitioner having failed to prove that the aforesaid will is entitled to probate as a lost or destroyed will under the provisions of RCW 11.20.070, it is decreed that the decedent died intestate and that the administration of her estate shall proceed in accordance with the applicable statutes.

Appellants shall recover their costs in this court.

It is so ordered.

FINLEY, C. J., OTT, and HUNTER, JJ., concur.