IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

|  |  |  |
|---|---|---|
| In the Matter of the Estate of | ) | No. 39460-3-III |
| CAROL A. DAHLSTROM. | ) | UNPUBLISHED OPINION |

FEARING, J. — This appeal asks what facts must the proponent of a will produce, when the proponent lacks the original will, in order to survive a summary judgment motion seeking to preclude the will from probate. The University of Puget Sound (UPS or the university) appeals from the summary judgment dismissal of its petition to probate a copy of a will that would bequeath to the university all of the decedent's estate. Although the copy lacks a signature of the testator and two witnesses, UPS claims a lost original contained all three signatures. It forwards the testimony of the will's drafter in support of this factual proposition. Because the drafting attorney lacks any memory of either the testator or the attesting witnesses signing the will, we conclude that UPS fails to create an issue of fact. We affirm the superior court.

FACTS

The appeal concerns a will purportedly signed by Carol Dahlstrom on February 25, 2009, an unsigned copy of which emergency responders found in her residence on her death. We remove the facts from affidavits and the deposition testimony of attorney

Edwin Wheeler. We view the facts in a glow favorable to appellant UPS. *Lamon v. McDonnell Douglas Corp.*, 91 Wn.2d 345, 349, 588 P.2d 1346 (1979).

On August 1, 2008, Carol Dahlstrom completed a Puget Sound "Legacy Confirmation Form" and sent it to the University of Puget Sound. On the form, Dahlstrom noted an intent to include UPS in her estate plan and requested more information about deferring gifts.

Later in August 2008, Carol Dahlstrom met with Kurt Graupensperger, an employee of the UPS Office of University Relations. During the meeting, she declared that she wanted to leave her entire estate to UPS and that she had met with her attorney to begin the process of preparing a will to accomplish her wishes. Dahlstrom also mentioned a desire to endow scholarships for UPS students majoring in education. During the meeting, Graupensperger provided Dahlstrom language options for her and her attorney to consider when inserting a bequest to the university in her will.

In September 2008, Carol Dahlstrom visited with UPS Dean of the School of Education Chris Kline. The two discussed the education program at the university and Dahlstrom's intended scholarship to be established through an estate bequest. Dahlstrom also mentioned a wish to extend a $50,000 bequest toward athletics in honor of her brother, a graduate at the university.

In either late 2008 or early 2009, Carol Dahlstrom visited her attorney, Edwin Wheeler, at his office, to discuss estate planning. Dahlstrom brought the paper that contained language pertaining to gifts to University of Puget Sound. Wheeler reviewed

2

the proposed language in the paper, which became articles 4 and 5 in a draft will. According to Wheeler, he would not have otherwise used the language given him on the paper, but he found the language acceptable. He included the language in a will he drafted for Dahlstrom.

In early 2009, Edwin Wheeler mailed the will draft to Carol Dahlstrom for her review. Dahlstrom asked for no changes to the draft.

According to Edwin Wheeler, Carol Dahlstrom signed the will prepared by Edwin Wheeler on February 25, 2009. Nevertheless, Wheeler lacks any memory of Dahlstrom appearing at his office on February 25 or of her signing the will. He lacks any memory of witnesses signing the will. He does not know the identity of any witness.

Despite no memory of the signing and witnessing of Carol Dahlstrom's will, Edwin Wheeler testified with confidence that Dahlstrom visited his law office and signed the will. He based this confidence on other circumstances. He personally typed the date, February 25, 2009, on the will using his manual Smith Corona typewriter, a typewriter different from the one used to type the will. He customarily typed the date with the manual typewriter when a client signed the will. He stamped "COPY" on the signature line on his copy of the will. According to Wheeler, this stamp shows the original to have been signed by Dahlstrom. The bottom left of Wheeler's copy of the will shows Wheeler's notary stamp. According to Wheeler, his notary stamp would not be present unless Dahlstrom signed the will. The notary seal and the "COPY" stamp does not, however, necessarily mean that witnesses were present.

3

According to Edwin Wheeler, in the course of his standard practice, he commandeered various staff members in his law office to function as witnesses to the signing of a will. Nevertheless, Wheeler cannot identify the employees who witnessed Carol Dahlstrom's signing. He has no recollection of any witnesses signing the will. Under his standard practice, however, Wheeler did not direct clients to sign a will without witnesses present.

Edwin Wheeler does not know what Carol Dahlstrom did with the original will document. Edwin Wheeler retired before the death of Dahlstrom. He kept no copy of the signed will. He does not know whether Dahlstrom executed a new will or revoked the 2009 will.

Edwin Wheeler confirmed that the unsigned copy of the will discovered in Carol Dahlstrom's residence after her 2019 death contained the same contents as the will he prepared in 2009. The will found in Dahlstrom's home has the stamp "COPY," which, according to Wheeler, evidences it is a copy of the will Dahlstrom signed. The copy also showed the notary seal of Wheeler.

In February 2009, Carol Dahlstrom telephoned Kurt Graupensperger, of the UPS Office of University Relations, to cancel an appointment wherein Graupensperger would have reviewed and received a copy of Dahlstrom's will. During the call, Dahlstrom informed Graupensperger that her estate planning documents were complete and that her attorney incorporated much of the language that Graupensperger recommended for a

4

bequest to UPS.  Graupensperger never saw a copy of a will.  Graupensperger does not know if Carol Dahlstrom ever revoked a will after signing it in 2008 or 2009.

On February 16, 2015, George Mills, Associate Vice-President of UPS University Relations, telephoned Carol Dahlstrom to discuss her estate bequests.  During the call, Dahlstrom commented that she had recently revised the two sections in her will that distributed her estate to UPS.  According to Dahlstrom, one section distributed $50,000 to athletics in her brother's honor.  Dahlstrom agreed, at Mills' request, to provide a copy of the pertinent sections of the will.

On February 17, 2015, Carol Dahlstrom sent a copy of her will's bequest sections to George Mills via a letter.  The sections read:

> Article Four.  In affectionate memory of my brother, Richard Dahlstrom (University of Puget Sound, Class of 1966) I give the sum of fifty thousand dollars to the University of Puget Sound, Tacoma, Washington, the funds to be used at the discretion of the University for an unrestricted purpose within athletics, for any endowment, capital or current use priority at the time of the gift's receipt by the University.  I request recognition for this gift honor my said brother, by the naming of an appropriate named space after him within the athletics facilities complex.
> Article Five.  I give, devise, and bequeath the residue of my estate to the University of Puget Sound, Tacoma, Washington, for the purpose and subject to restrictions next set forth.  The residue of my estate shall be used to establish the Carol A. Dahlstrom Excellence in Teaching Endowed Scholarship Fund.  The principal will become part of the University's permanent endowment fund, and for investment purposes only may be pooled with other funds.  From the Fund's principal and earnings scholarships will be awarded to promising students enrolled in the School of Education Master of Teaching Program, on the basis of need, and in accordance with the University's established endowment policy.  No other use shall be made of the Fund's principal or earnings, and failure to apply the Fund's principal or interest as directed here shall cause this gift to lapse,

in which event the residue of my estate shall be distributed as directed in
Article Six of this will.

Clerk's Papers (CP) at 174. Dahlstrom did not forward to Mills the pages of her will that

included the testator's signature line or the witnesses' signature lines. While living,

Dahlstrom never provided the University of Puget Sound, despite its requests, with a

copy of any executed or unexecuted will.

On December 2, 2019, Carol Dahlstrom died at her home in Lakewood. At the

time of her death, her closest living relatives were her two nieces, Hailey Dahlstrom and

Kate Mata, and her nephew, Sean Dahlstrom. After her death, emergency responders

found, at her residence, an unattested and unsigned copy of the will purportedly prepared

by Edwin Wheeler.

George Mills died in February 2020.

### PROCEDURE

On December 17, 2019, Carol Dahlstrom's niece, Kate Mata, filed a petition for

an order appointing her as the administrator of Dahlstrom's estate. She claimed that

Dahlstrom died intestate. On December 17, the superior court signed an order appointing

Mata and issuing letters of administration.

On April 17, 2020, University of Puget Sound filed a petition, pursuant to

chapter 11.96A RCW, to probate the purported lost will. The petition attached a copy of

the unsigned will discovered in Carol Dahlstrom's residence. The superior court

consolidated the warring petitions.

6

Kate Mata filed a summary judgment motion to dismiss UPS' petition. The motion argued that Carol Dahlstrom had no enforceable will at the time of her death, and, therefore, UPS was not a beneficiary of the estate. In response to the motion, UPS filed an affidavit of Edwin Wheeler that avowed, in part:

> Carol [Dahlstrom] had no changes to her proposed Will, and so she came to my office where I watched her sign her Will and I notarized it on February 25, 2009.

CP at 177. Mata thereafter deposed Wheeler. The following colloquy transpired during the deposition:

> Q. [Kate Mata's counsel] And I'll change the question. Do you recall sitting down with Carol Dahlstrom on February 25, 2009 and watching her execute this Will?
> A. [Edwin Wheeler] At this time I do not.
>      . . . .
> Q. If you go to the final page of her Will, it has a list of two witnesses here. Do you recall the names of the two witnesses who could have signed Carol's Will?
> A. I do not.
> Q. Do you recall any witnesses ever signing this 2009 Will?
> A. I do not.

CP at 133-34.

The superior court granted Kate Mata's summary judgment motion, thereby declaring that Carole Dahlstrom died intestate.

## LAW AND ANALYSIS

### Validity of Will

On appeal, UPS contends it presented sufficient evidence to present a question of fact as to the vitality of the will found in Carol Dahlstrom's abode on her demise.

According to UPS, this evidence supports a finding that Dahlstrom executed her will in the presence of two witnesses on February 25, 2009. In so arguing, UPS asserts that, under RCW 11.20.070, a witness may support the probate of a lost will, despite that witness not being one of the two witnesses who attested to the signature on the will, if the witnesses saw the three signing. According to UPS, Edwin Wheeler serves as that witness in this proceeding.

UPS also asserts that Edwin Wheeler's notary stamp and the "COPY" stamp on the copy of the will evidence that Carol Dahlstrom and two attesting witnesses signed the will. We agree that Wheeler testified that the two stamps, in accordance with his standard practice, show that Dahlstrom signed. We disagree that the stamps demonstrate that subscribing witnesses signed. UPS does not cite the record for this latter factual contention. During his deposition, Wheeler declared that the notary seal and the "COPY" stamp does not necessarily mean that witnesses were present.

During oral argument, UPS's counsel implied that the lost will could be validated based on Edwin Wheeler's testimony as to his customary business practices even if he lacks any memory of the signing of the will. Counsel cited no case in support of such a contention and conceded that UPS found no such case. In its brief, UPS never argued for the upholding of the will based on Wheeler's testimony of his custom of stamping "COPY," placing his notary seal, and inserting the date on a copy of the will only after the signing of the will. UPS did not cite to *In re the Estate Neubert's*, 59 Wn.2d 678, 369 P.2d 838 (1962). We need not consider arguments that are not developed in the briefs

8

and for which a party has not cited authority. *American Federation of Teachers, Local 1950 v. Public Employment Relations Commission*, 18 Wn. App. 2d 914, 921 n.3, 493 P.3d 1212 (2021); *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

Kate Mata contends that Edwin Wheeler lacks any personal knowledge of the signing or attestation of Carol Dahlstrom's will. Thus, according to Mata, UPS raised no genuine issue of fact of the validity of will. Mata also argues that, as a matter of law, UPS failed to rebut a presumption that, assuming the proffered will to be legitimate, Dahlstrom revoked the will between 2015 and her death in 2019. Because we agree with Mata's first argument, we do not address any presumption of revocation.

Although UPS possesses an unsigned copy of the 2009 will, both parties agree that the will became a lost will because no one has located the original. Two Washington statutes govern the probate of a lost will. First, RCW 11.20.070 reads:

> (1) If a will has been lost . . . under circumstances such that the loss . . . . does not have the effect of revoking the will, . . . the court may take proof of the execution and validity of the will and establish it. . . .
> (2) The provisions of a lost . . . will must be proved by clear, cogent, and convincing evidence, consisting at least in part of a witness to either its contents or the authenticity of a copy of the will.

Second, RCW 11.12.020(1) declares:

> (1) . . . [E]very will shall be in writing signed by the testator or by some other person under the testator's direction in the testator's presence or electronic presence, and shall be attested by two or more competent witnesses, by subscribing their names to the will, or by signing an affidavit that complies with RCW 11.20.020(2), while in the presence or electronic presence of the testator and at the testator's direction or request.

Although RCW 11.20.070(2) only demands that the proponent establish the contents of the will by clear, cogent, and convincing evidence, the Washington Supreme Court has imposed this same burden of proof as to the execution of the will. *In re Estate of Black*, 153 Wn.2d 152, 165, 102 P.3d 796 (2004).

The copy of the will submitted to the court by UPS lacks a signature of Carol Dahlstrom. The copy also lacks the signatures of two attesting witnesses. Assuming any witness witnessed the signing, we do not know the identity of that witness or witnesses.

RCW 11.12.020 requires that the testator and the two subscribing witnesses be competent. On appeal, Kate Mata does not highlight that Edwin Wheeler never testified to the competency of Carol Dahlstrom or the will witnesses. Although RCW 11.20.070, the lost will statute, references the need to prove the contents of the will, in addition to its execution, Mata does not attack UPS' description of the will's substance.

Under RCW 11.20.070, in the event a will is lost, the court "may take proof of the execution and validity of the will" in compliance with the requirements of RCW 11.12.020. *In re Estate of Black*, 153 Wn.2d 152, 164-65 (2004). A lost will must have the same RCW 11.12.020 requirements as all other wills. *In re Estate of Black*, 153 Wn.2d 152, 164-65 (2004); *Harris v. Harris*, 10 Wash. 555, 559, 39 P. 148 (1895). Under RCW 11.12.020, a court deems a lost will properly executed if the will is (1) in writing, (2) signed by either the testator or another person under the testator's direction in the testator's presence, and (3) attested to by two witnesses in the presence of the testator

and at the testator's request. RCW 11.12.020. Kate Mata challenges UPS' fulfillment of the second and third elements of proving a lost will.

The witness proffered to prove the execution of a lost will must be able to testify to his or her own personal knowledge regarding both the testator and the subscribing witnesses signing the will. *In re Estate of Black*, 153 Wn.2d 152, 166 (2004). A witness may testify only to events within his or her personal knowledge, and affidavits submitted during summary judgment proceedings must be based on the affiant's personal knowledge. ER 602; CR 56(e); *In re Estate of Black*, 153 Wn.2d 152, 166 (2004).

Both parties rely on *In re Estate of Black*, 153 Wn.2d 152 (2004). No one could locate the original will of the decedent, Margaret Black. Myrna Black, the proponent of her mother's will, submitted affidavits by Robert Reiter, Janet Taylor, Paul Blauert, and herself in support of the lost will. Reiter's affidavit stated that he, a California attorney and Myrna's friend, accompanied Myrna to visit her mother in August 1993. Myrna and Reiter obtained the unexecuted 1993 will from attorney Blauert in Seattle and continued to Walla Walla, where Margaret resided. Reiter discussed the 1993 will with Margaret, Margaret read the will, and Reiter verified that the will reflected her wishes. Myrna arranged for a notary public to attend the execution of the will. Reiter remembered the notary was Taylor. After Margaret reviewed and discussed the will, she initialed each page and signed the will in the presence of Reiter and Taylor. Reiter and Taylor then signed as witnesses. Subsequently, Reiter and Myrna returned to Seattle, and Myrna gave Blauert the will.

In his affidavit, Paul Blauert stated that he prepared the 1993 will at Myrna Black's request, and the provisions in the will attached to his affidavit were the same as those in the will given to Myrna in August 1993. Myrna returned this same document to Blauert on August 15, 1993. Blauert noticed the will was executed on August 14, 1993, and it was signed by two attesting witnesses. The original will and another document were placed in a file. In October 2000, Myrna contacted Blauert requesting the will. Blauert could not find the file and stated that, when he retired in January 1996, he had discarded most of his paper files. Blauert found a computer disk with a copy of the will, printed a copy, and sent the copy of the unsigned will to Myrna.

Janet Taylor, the notary public, and the other witness to the 1993 will identified by Robert Reiter did not recall witnessing the signing of the 1993 will or any of the people involved. She believed she personally witnessed Margaret Black sign this document because she did not notarize documents for people she did not know unless the person was present. Nevertheless, Taylor had no recollection of witnessing the will or speaking to Myrna Black, Margaret, or Reiter.

Despite objections to summary judgment by other heirs, the superior court granted Myrna Black's motion for summary judgment admitting the lost will to probate. The court based the judgment on Robert Reiter's and Paul Blauert's affidavits. The trial court made no finding as to the capacity in which Janet Taylor had signed the will. The Court of Appeals reversed summary judgment and remanded to resolve questions of fact. The Supreme Court affirmed the Court of Appeals. The Supreme Court noted that Reiter's

12

testimony sufficed to establish that Margaret Black and himself had signed the will as witnesses. After all, Reiter testified based as a percipient witness to the signings. The question of fact resolved not around whether Taylor signed the will, but instead whether she signed as an attesting witness or as a notary. If she signed as a notary, only two attesting witnesses signed.

Kate Mata argues that, based on *Estate of Black*, the definition of witness as used in RCW 11.20.070 is one with personal knowledge of the fact that the will was signed by the testator. *In re Estate of Black*, 153 Wn.2d 152, 167 (2004); *In re Estate of Price*, 73 Wn. App. 745, 751, 871 P.2d 1079 (1994). We agree. We further agree that Edwin Wheeler fails to meet the definition of witness for purposes of the lost will statute and his testimony fails to provide clear, cogent, and convincing evidence that Carol Dahlstrom or two attesting witnesses signed the will.

UPS contends that Edwin Wheeler averred that, in addition to Carol Dahlstrom signing the will, two witnesses signed the will in his presence on February 25, 2009. UPS highlights the affidavit of Edwin Wheeler that avowed:

> Carol [Dahlstrom] had no changes to her proposed Will, and so she came to my office where I watched her sign her Will and I notarized it on February 25, 2009.

CP at 70. The affidavit, however, did not state that Wheeler had a memory of or personal knowledge of watching her sign the will. One might argue that the language "I watched her sign" necessarily means he remembers watching. Nevertheless, his detailed deposition testimony contradicted such a reading of the affidavit. Wheeler unequivocally

13

testified, during the deposition, that he lacked any memory of either Dahlstrom or the witnesses signing.

Generally, when a party gives clear answers to unambiguous questions in a deposition that negate the existence of any question of material fact, that party cannot thereafter create an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Heston v. Christensen*, __ Wn. App. 2d ___, 548 P.3d 961, 969 (2024); *Cornish College of the Arts v. 1000 Virginia Limited Partnership*, 158 Wn. App. 203, 227, 242 P.3d 1 (2010). Although this rule usually applies in the context of a party's, not a nonparty witness', testimony and, even though the principle generally extends to the affidavit being signed after the deposition, we discern no reason not to apply the rule to an affidavit signed by a nonparty before the deposition. Furthermore, Edwin Wheeler explained, in his deposition, that his affidavit testimony of having seen Carol Dahlstrom signing the will was based on his normal business practice not his personal knowledge.

When a party must prove a fact by clear, cogent, and convincing evidence, we incorporate that standard of proof in our assessment of the evidence on summary judgment. *Kitsap Bank v. Denley*, 177 Wn. App. 559, 569, 312 P.3d 711 (2013). To avoid summary judgment, the nonmoving party must present sufficient evidence to establish with "high probability" the fact at issue. *In re Estate of Riley*, 78 Wn.2d 623, 640, 479 P.2d 1 (1970); *Portmann v. Herard*, 2 Wn. App. 2d 452, 462-63, 409 P.3d 1199

14

(2018). UPS lacks any percipient testimony of the signing of the will, let alone evidence to establish by a high probability the facts it forwards.

## Attorney Fees

UPS seeks an award of reasonable attorney fees and costs on appeal. Under RCW 11.96.150, the court has broad discretion to award attorney fees. Since UPS does not prevail on appeal, we deny it any award.

## CONCLUSION

We affirm the summary judgment order dismissing UPS' petition to probate a photocopy of a will.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____      _____
Staab, A.C.J.                    Cooney, J.